## POTTORFF v. DEAN.
### No. 3015.

Circuit Court of Appeals, First Circuit.
May 25, 1935.

Haven Parker, of Boston, Mass. (William Macy Marvel and Parkman, Robbins, Coughlin & Hannan, all of Boston, Mass., on the brief), for appellant.

Charles B. Rugg, of Boston, Mass. (Warren F. Farr, James T. Mountz, and Ropes, Gray, Boyden & Perkins, all of Boston, Mass., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

## WILSON, Circuit Judge.

This is an action by the receiver of the First National Bank of El Paso, Tex., a national banking association, to enforce an alleged statutory liability of the appellee as a stockholder of said bank, which was declared insolvent by the comptroller of currency, September 4, 1931.

The case was heard by the District Judge, a jury being waived, who made the following findings of fact, which are undisputed.

The defendant, Mrs. Dean, is the daughter of a former president of the First National Bank of El Paso, Tex., and of the First National Bank of Albuquerque, N. Mex., and some time between 1899 and 1922 she had acquired by gift from her father or by purchase 571 shares of the capital stock of the First National Bank of El Paso, and 31 shares of the capital stock of the First National Bank of Albuquerque. For the El Paso bank stock purchased, she paid an average price of $225 per share.

On January 27, 1926, she made an indenture of trust for the benefit of her four minor children, and transferred to the Boston Safe Deposit & Trust Company and James Dean, a brother-in-law, as trustees, the 571 shares of the El Paso bank and the 31 shares of the First National Bank of Albuquerque. This transfer of the 571 shares was recorded on the books of the El Paso bank on February 16, 1926, and a certificate for the 571 shares was issued to the trustees named in the indenture of trust to be held for the benefit of the minor children of Mrs. Dean upon the terms provided in the trust.

Mrs. Dean made no reservation of any power of revocation of the trust, nor any other reservations for her own benefit. The shares were to be held in trust until the 11th day of May, 1941, when all her children, if living, would previously have become of age.

At the time of the transfer, both banks were in a prosperous condition, the shares thereof having a market value considerably above par, and for many years prior thereto both banks had been prosperous and conservative banking institutions and had paid dividends from 4 to 10 per cent. per annum. In 1929 the trustees declined an offer of considerably over par for 565 shares of the stock of the El Paso bank. In 1930 the shares of the El Paso bank had a market value of $135 per share, and it was not until 1931 that the solvency of the bank had ever been questioned. Through her family connection with the National Bank, Mrs. Dean knew of the statutory liability of stockholders of such banks, but this had nothing to do with her decision to create a trust in favor of her minor children. The trust was created in entire good faith without any intention whatever of evading any liability of holders of bank stock. After the trust was created, the trustees received the dividends on the stock, which were distributed in accordance with the terms of the trust for the benefit of her minor children.

At the time of the appointment of the receiver, the 31 shares of the Albuquerque bank were all the assets in the hands of the trustees other than the shares of the El Paso bank. The shares of the Albuquerque bank were turned over to the receiver, or plaintiff in this action, with the apparent understanding that they were in full satisfaction of the trustees' liability under section 5152, R. S., section 66, 12 USCA.

It appears from the record, we think, that they were so accepted by the receiver; but in order that he might not be subjected to stockholders' liability in case the Albuquerque bank became insolvent, it was agreed between him and the trustees that, until sold, the shares might be held as collateral against the liability of the trustees,

and that when sold the proceeds would fully discharge the trustees from all further liability arising from the ownership of the 571 shares of the El Paso bank.

The issues of law raised by the plaintiff's assignments of error are whether or not the transfer by Mrs. Dean to the trustees for the benefit of her minor children exempted her from liability for assessment when there were not sufficient funds in the hands of the trustees to pay the assessment on the El Paso bank stock, and whether the ruling of the District Judge that the acceptance of the stock of the First National Bank of Albuquerque by the plaintiff as collateral to the stock assessment liability operated as a release of Mrs. Dean from·any liability therein.

The statutes imposing liability for assessment of the shareholders of national bank stock are sections 63, 64, and 66, 12 USCA. Sections 63 and 64 provide that the shareholders of every national banking association shall be individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock.

Section 66 provides, with respect to the liability of representatives of stockholders, as follows:

"Persons holding stock as executors, administrators, guardians, or trustees, shall not be personally subject to any liabilities as stockholders; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in such trust funds would be, if living and competent to act and hold the stock in his own name."

The plaintiff bases his claim on the ground that every transfer of national bank stock, to be valid, must be made to some one capable of assuming the liability imposed on every shareholder in a national bank under sections 63 and 64, 12 USCA; and in case of a transfer to trustees, that there must be other assets in the hands of the trustees sufficient to meet the double liability in case of insolvency. It is well settled, however, that financial responsibility is not essential, but only a legal capacity to assume the obligation. Earle v. Carson, 188 U. S. 42, 55, 23 S. Ct. 254, 47 L. Ed. 373.

It has been held that a transfer to minors does not relieve the transferor of the obligation imposed by the statute, as a minor is not capable of entering into a binding contract or assuming any obligations. Riley v. Bondi (C. C. A.) 64 F.(2d) 515; Seabury, Receiver v. Green, Adm'x, 294 U. S. 165, 55 S. Ct. 373, 79 L. Ed. ——; Early, Receiver v. Richardson, 280 U. S. 496, 50 S. Ct. 176, 74 L. Ed. 575, 69 A. L. R. 658. These decisions, however, rest on· the ground that no transfer has taken place, as the minors are incapable of accepting the stock, hence the transferor remains liable as if no attempted transfer had taken place. In other words, the transferor had not thereby divested himself of the title.

The sections of the statutes above referred to impose the liability on shareholders. Mrs. Dean was no longer a shareholder at the time of insolvency of the El Paso bank. She had five years before divested herself of all title and interest in the shares of stock. Under no circumstances, even upon the termination of the trust, would Mrs. Dean receive back any part of the trust estate under the provisions of the indenture of trust, and in transferring to the trustees the shares of bank stock, she divested herself of any and all interest therein. It is not a case of an attempted transfer to a minor who cannot enter into a binding contract, and hence no transfer can be held to have taken place before insolvency of the bank. Mrs. Dean transferred her stock to trustees for a lawful purpose. They were competent to accept the trust and did accept and act thereunder. Mrs. Dean retained none of the qualifications of a shareholder. She could not vote; she was no longer entitled to the earnings of the bank in the shape of dividends, or share in the assets in case of liquidation. In no way could she comply with the definition of a shareholder found in Beal v. Essex Savings Bank (C. C. A.) 67 F. 816.

The shares were registered in the name of the trustees. They were transferred to· parties recognized by Congress as competent to hold such stock. There is nothing in the statute to imply that trustees cannot purchase or take and hold national bank. stock, unless they also have other assets sufficient to pay any liability resulting from holding the bank stock. The only requirement so far imposed by the decisions is·

that the transfer shall be made to some one legally competent to hold and comply with sections 63, 64, and 66 of the statutes.

Conveyances to trustees have been recognized as valid transfers and as relieving the transferor of all liability. Heiden v. Cremin (C. C. A.) 66 F.(2d) 943; Lucas v. Coe (C. C.) 86 F. 972; Fowler v. Gowing (C. C.) 152 F. 801; McNair v. Darragh (C. C. A.) 31 F.(2d) 906; Williams, Receiver, v. Cobb, 242 U. S. 307, 37 S. Ct. 115, 61 L. Ed. 325.

Neither Congress nor the courts have shown any disposition to restrict the right to transfer bank stock with the resulting release of the transferor of the liability for double assessment, except in case of fraud or bad faith, or an attempted transfer to a legally incompetent party. As the court said in First Nat. Bank v. Lanier, 11 Wall. 369, 377, 20 L. Ed. 172:

"The power to transfer their stock is one of the most valuable franchises conferred by Congress on banking associations. Without this power, it can readily be seen the value of the stock would be greatly lessened, and, obviously, whatever contributes to make the shares of the stock a safe mode of investment, and easily convertible, tends to enhance their value."

We find nothing in the statute that restricts an owner of national bank shares transferring in good faith to any person legally capable of holding such stock, without inquiring whether they are financially responsible to respond to a double assessment in case of the insolvency of the bank, or even if the transferor knew that at the time that the transferee could not meet such liability, provided the transferor had no notice of the insolvency of the bank and the transfer was not made to escape possible financial responsibility. Earle v. Carson, supra; McDonald, Receiver, v. Dewey, 202 U. S. 510, 526, 26 S. Ct. 731, 50 L. Ed. 1128, 6 Ann. Cas. 419; Lucas v. Coe, supra; Sykes v. Holloway et al. (C. C.) 81 F. 432; Forrest v. Jack, 294 U. S. 158, 55 S. Ct. 370, 79 L. Ed. ——. A transferee, though not financially responsible at the time of transfer, may become able to respond before insolvency of the bank becomes a fact. So, too, as Mrs. Dean made no restrictions on the trustees with respect to the reinvestment of the trust funds,

she could not be held to anticipate that the trustees would continue to hold the El Paso bank stock and not sell any portion of it, and so become able to respond to any liability for a double assessment on the balance, in case of the insolvency of the bank. It appears in evidence, as stated above, that the trustees refused an offer of $125 per share for 565 shares of the El Paso bank stock less than two years before the bank was determined to be insolvent.

The finding by the District Court that the transfer by Mrs. Dean was made in good faith, with no thought of escaping any liability on her part, was warranted by the evidence; and the fact that the shares of the Albuquerque bank were not sufficient to meet a liability in case of insolvency, which was not anticipated at the time of the creation of the trust, does not render the transfer void.

There is good ground, too, as the District Judge intimated, for holding that the receiver is now estopped from recovering against Mrs. Dean. Upon his appointment, the receiver notified the trustees of their liability under the statute. The trustees responded and forwarded the 31 shares of the Albuquerque bank in discharge of their liability. The receiver, to avoid a possible liability in case of insolvency of the Albuquerque bank, requested that he might hold it as collateral until sold. The only inference from the letters passing between the trustees and the receiver is, that when sold it was to discharge the liability of the trustees. Having accepted it on that basis, and having sold the stock, the receiver is bound by it. He cannot hold both the trustees and Mrs. Dean. The two propositions are inconsistent. He has made his election to hold the trustees on the ground that there was a bona fide transfer to the trustees and that the trust estate was liable under section 66, 12 USCA. He now seeks to recover the full amount of the double assessment of Mrs. Dean under sections 63 and 64, upon the theory that there was no valid transfer to the trustees. He has made no offer to restore the Albuquerque bank stock, or the proceeds of its sale. Yardley v. Wilgus (C. C.) 56 F. 965.

The judgment of the District Court is affirmed, with costs.