### DURRANCE v. COLLIER.
#### No. 7778.

Circuit Court of Appeals, Fifth Circuit.
Jan. 10, 1936.

Rehearing Denied Feb. 21, 1936.

Donald C. McMullen, of Tampa, Fla., for appellant.

P. O. Knight, C. Fred Thompson, and A. G. Turner, all of Tampa, Fla., for appellee.

Before FOSTER, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

In proceedings under a petition filed by Barron G. Collier (herein called the debtor) praying an extension of time to pay his debts (11 U.S.C.A. § 202), the appellant, as receiver of the First National Bank of Arcadia, Fla. (herein referred to as the bank), filed a verified proof of claim which, after alleging that the debtor was, at and before the filing of said petition, and still is, justly indebted to appellant as such receiver in the lawful sum of $51,700.00, with lawful interest thereon from the 31st day of May, 1932, alleged:

"That the consideration of said debt is as follows:

"That on, to-wit, the 23rd day of January, A. D., 1932, the said First National Bank of Arcadia, Florida, suspended business and on said date and long prior thereto the said Barron G. Collier was the true and lawful owner of five hundred twenty-seven (527) shares of the capital stock of said bank of the par value of One Hundred Dollars ($100.00) each and was from, to-wit, the 6th day of April, A. D., 1925, until the suspension of said bank on, to-wit, the 23rd day of January, A. D., 1932, a director

of the said First National Bank of Arcadia, Florida; that at some date unknown to this deponent the said Barron G. Collier caused to be organized a corporation known as Collier Investing Company and on, to-wit, the 6th and 7th days of August, A. D., 1928, caused five hundred seventeen (517) shares of the capital stock of said bank so standing in his name to be assigned to the said Collier Investing Company by the assignment of sundry certificates of stock aggregating the number of shares last mentioned; that deponent is informed and believes and upon information and belief alleges, that the said assignment of the said stock by the said Barron G. Collier to the said Collier Investing Company was made without any valid consideration and for the purpose of concealing the identity of the true owner of the stock; that the transfer was made with knowledge on the part of the said Barron G. Collier of the fact that the condition of the said First National Bank of Arcadia, Florida, was such that its solvency was imperiled, and that the assignment and transfer of said stock was made with the intent on the part of the said Barron G. Collier to evade the statutory liability for assessment, which would accrue in the event of the insolvency of the said bank. * * * *"

That proof of claim further alleged to the following effect: That the Comptroller of the Currency had levied an assessment upon the stockholders of said bank of 100 per cent. of the par value of each share thereof; that due notice of that assessment and of demand for payment thereof was given to the debtor; that on a stated date the Comptroller of the Currency had, by order in writing, authorized and directed the appellant, as such receiver, to enforce the liability of said stockholders to the amount of said assessment, and that the debtor has paid no part of said assessment against him except the sum of $1,000, and that there are no set-offs or counterclaims to said assessment against the debtor, and that no manner of security for said debt has been received. By answer to the proof of claim, the debtor admitted that said bank suspended business on January 23, 1932, and that the debtor transferred 517 shares of the capital stock of that bank, and denied all other allegations of said proof of claim. Evidence showed the following: In 1925 the debtor ac-

quired 527 shares of the capital stock of the bank. He became a director of the bank in April, 1925, and continued to be a director until the bank failed. The debtor stated that, when he sold 517 of those shares to Collier Bros., he had hypothecated those shares with the Chase National Bank of New York and the Continental Bank of Chicago. The debtor's schedule in the extension of debts proceeding of "Creditors Holding Securities," filed April 30, 1934, showed that the Chase National Bank of New York held 371 of those shares as collateral for loans made to the debtor, and that the Continental Illinois Bank & Trust Company of Chicago held 150 of those shares as collateral for loans to the debtor. In August, 1928, the certificates for all but 6 of the 527 shares of the bank standing in the name of the debtor were canceled, a new certificate for 4 shares was issued in the name of the debtor, and new certificates for 517 shares were issued in the name of Collier Investing Company. The debtor stated that he did not transfer 517 shares of the stock of the bank to Collier Investing Company, but that he sold 517 shares of that stock to Collier Bros., but did not know what he got in return for those shares. The debtor also stated: "I acquired 527 shares in that Bank in 1925, and continued to hold those in my name until August, 1928. * * * About this time all bank stocks were transferred on the advice of our legal department to holding company." The just quoted testimony is hardly reconcilable with the book entry evidence mentioned below as to a sale by the debtor to Collier Bros. in February, 1927, of 517 shares of the Bank's stock at about $180.00 a share. It seems that, if the debtor really got more than $95,000 for stock which continued to be hypothecated for his debts, he would have remembered such an achievement. An official of Collier Bros., who was a witness for the debtor, testified to the following effect: The books of Collier Bros. showed that 517 shares of the bank's stock were sold by the debtor to Collier Bros. in February, 1927, for $95,944.22, about $180 per share, that stock then being hypothecated with the Chase National Bank and the Chicago bank. Collier Bros. never had actual possession of certificates for that stock. The minutes of Collier Bros. contain nothing as to that stock. On the day they acquired those shares, Collier

Bros. sold them to the Collier Investing Company, receiving therefor 1,000 shares of Collier Investing Company stock, which Collier Bros. disposed of in July, 1929, for a total consideration of $2,500. No record of the bank shows any connection of Collier Bros. with the transfer of the 517 shares of the bank's stock. No evidence indicated that Collier Investing Company was solvent when certificates for 517 shares of the bank's stock were issued in its name. The debtor stated that he did not think that Collier Investing Company is alive any longer. The official of Collier Bros. who was a witness for the debtor stated that he did not know anything about the assets of Collier Investing Company at the time it gave Collier Bros. 1,000 shares of its stock for the 517 shares of the bank's stock. Evidence further showed as follows: At a meeting of the bank's stockholders in January, 1929, Edwin W. Poe presented a proxy of the debtor for 10 shares, and proxies of Collier Investing Company for 517 shares. The proxies were in exactly the same words, on exactly the same kind of paper, and typewritten by the same typewriter. The minutes of the meeting of the bank's stockholders in January, 1930, show the same thing as to proxies. That meeting was held for the purpose of consolidating the bank and the Florida Trust & Banking Company. The minutes of the meeting of the bank's stockholders in January, 1931, show that the debtor was present representing 10 shares of stock standing in his own name and 517 shares standing in the name of Collier Investing Company, but without a proxy from that company. At the time of the above referred to consolidation of the two banks, voted on at the meeting of the bank's stockholders in January, 1930, Mr. Poe, the debtor's representative, prepared for publication a statement as to the debtor's interest in those banks. That statement contains the following:

"Barron Collier, one of Florida's outstanding property-owners and developers, is a large stockholder of both these institutions and the plan just now effected is said to have his hearty approval and to be in keeping with his policy of concentrated effort with the minimum of operating overhead.

"Edwin W. Poe, financial director of the Collier organization, was here this

week assisting in working out the details of the consolidation."

Prior to the closing of the bank in January, 1932, the president of the bank by telephone asked the debtor's opinion as to whether the bank should be closed immediately, and the debtor said "Yes;" and, in connection with that telephone conversation, the debtor wrote a letter to the president of the bank confirming the action of the bank's board of directors in closing the bank. The appellant introduced evidence which was relied on to support the allegations of the proof of claim as to the debtor's transfer of most of his stock in the bank having been made with knowledge on the part of the debtor that the solvency of the bank was imperiled and with intent on the part of the debtor to evade the statutory liability for assessment against holders of the bank's stock. In view of the conclusion stated below, it is not deemed material to set out the evidence just referred to. Upon hearing on the debtor's objection to the above-mentioned proof of claim, the court made an order disallowing that claim.

▆ It fairly is to be inferred from the evidence that, though there was a nominal transfer by the debtor in 1928 of 517 of the 527 shares of the bank's stock owned by him, he continued to be the beneficial owner of all those shares. They remained hypothecated to creditors of the debtor up to the time the debtor filed his schedules in the extension of debts proceeding. It appeared that the debtor or his representative controlled all those shares for voting purposes at meetings of the bank's stockholders subsequent to the date of the nominal transfer, including the meeting in January, 1930, when the above-mentioned consolidation of the bank with another institution was approved. In a published statement with reference to that consolidation, prepared by the debtor's representative, Mr. Poe, the debtor was referred to as a large stockholder of the bank. Evidently the debtor's representative then understood that the debtor really owned greatly more than 10 shares of the bank's stock. The evidence as to the transfer of 517 of the 527 shares of the bank's stock held by the debtor is not such as to warrant a finding that the debtor really sold the shares formally transferred. The debtor's own testimony showed that the stock was "transferred on the advice of our legal depart-

ment to holding Company," but that he did not know what he got for it. In view of the debtor's retention of the benefits of actual ownership of the 517 shares nominally transferred, it is not reasonably credible that the entries found on books of Collier Bros. represented an actual sale, for about $180 a share, of 517 shares of the bank's stock which remained hypothecated for debts of the debtor, certificates for those shares never being received by Collier Bros.; especially as evidence with reference to that transaction shows that on the day they acquired those shares Collier Bros. sold them for stock in another Collier corporation which stock Collier Bros. disposed of for a total consideration of $2,500. We are of opinion that the evidence as a whole requires the conclusion that the debtor's transfer of 517 shares of his stock was merely colorable.

[2, 3] It is well settled that the actual owner of national bank stock may be held for an assessment although his name does not appear upon the transfer books of the bank. Early v. Richardson, 280 U.S. 496, 50 S.Ct. 176, 74 L.Ed. 575, 69 A.L.R. 658; Forrest v. Jack, 294 U.S. 158, 55 S.Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457; Pauly v. State Loan & Trust Co., 165 U.S. 606, 17 S.Ct. 465, 41 L.Ed. 844. A colorable transfer of shares of stock in a national bank, made for the benefit of the transferor, cannot relieve the latter from his liability as a shareholder for the debts of the bank. McDonald v. Dewey, 202 U.S. 510, 26 S.Ct. 731, 50 L.Ed. 1128, 6 Ann.Cas. 419; Corker v. Soper (C.C.A.) 53 F.(2d) 190.

▆ The evidence showing that the debtor continued to be the beneficial owner of the nominally transferred shares was not materially variant from the allegations of the proof of claim. The filing of the proof of claim was not the institution of a suit at law. Wiswall v. Campbell, 93 U.S. 347, 350, 23 L.Ed. 923. Bankruptcy proceedings are more summary than ordinary suits, and a sworn proof of claim against a bankrupt is prima facie evidence of the allegations in case it is objected to. Whitney v. Dresser, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584; In re Small (D.C.) 1 F.(2d) 452. It cannot reasonably be affirmed that the evidence as to the debtor's transfer of most of the bank's stock standing in his name was such as to overcome the prima facie case made

**8**

by the proof of claim. Claims in bankruptcy need not be pleaded with the technical accuracy required in a common-law declaration. In re International Match Corporation (C.C.A.) 69 F.(2d) 73. The essential thing in the proof of claim was the allegation to the effect that a transfer by the debtor of shares of the bank's stock standing in his name did not result in really changing the ownership of that stock or relieve the debtor of liability for the assessment sought to be enforced. *Allegations as to what caused the debtor to remain liable for that assessment did not constitute an essential part of the proof of claim.* First National Bank v. Montgomery County National Bank, 64 Kan. 134, 67 P. 458. *It was enough to keep the disallowance of the claim from being warranted that the evidence showed that the transfer in question was merely colorable, with the result that the debtor remained the beneficial owner of the formally transferred shares, and liable for the assessment sought to be enforced.*

The order appealed from is reversed.