## Banco Kentucky's Receiver et al. v. Louisville Trust Co.'s Receiver.

(Decided March 10, 1936).

**156**

DAVID R. CASTLEMAN for appellants.

HUSTON QUIN and HUGH B. FLEECE for appellee.

H. H. NETTELROTH for creditors of Louisville Trust Co.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The receiver of the Louisville Trust Company brought an action to recover statutory double liability which had been assessed against the BancoKentucky Company, a Delaware corporation. The circuit court rendered judgment against the BancoKentucky Company and its receiver in the sum of $1,632,677, the assessment having been made at the rate of $100 per share, because of 16,326.77 shares of the capital stock of the Louisville Trust Company beneficially owned by the BancoKentucky company by virtue of its holding of trustees' participation certificates representing such number of shares of stock. The defendants have appealed, and earnestly insist: (1) That the Banco-Kentucky Company was not the beneficial owner of any shares of stock of the Louisville Trust Company, and therefore was not subject to the statutory double liability when the Louisville Trust Company failed; and (2) that in no event can it be liable on more than 50 per cent. of the trust company's stock, because of section 609 of the Kentucky Statutes, which provides that no person shall hold or own more than one-half of the capital stock of a trust company.

The Louisville Trust Company was organized under the banking laws of Kentucky, and its outstanding capital stock was $1,750,000 when it closed its doors and turned its affairs over to the state banking commissioner on November 17, 1930. The Jefferson circuit court, in which the receivership proceedings were pending, entered a judgment on July 3, 1931, making a 100 per cent. assessment against all stockholders of the Louisville Trust Company for the benefit of its creditors. Under section 613 of the Kentucky Statutes, the stockholders

of a trust company organized under the laws of this state are charged with double liability on its contracts and liabilities. The statute reads:

"The stockholders of each company organized under this article shall be individually responsible, equally and ratably, and not one for the other, for all contracts and liabilities of such corporation to the extent of the amount of their stock at par value, in addition to the amount of such stock; but persons holding stock as fiduciaries shall not be personally liable as stockholders; but the estates in their hands shall be liable in the same manner, and to the same extent, as the property of other stockholders; and no transfer of stock shall operate as a release of any such liability existing at the time of such transfer, provided the action to enforce such liability shall be commenced within two years after the time of the transfer; and the directors of each corporation shall, in January of each year, file with the secretary of state a correct list of the stockholders and officers of such corporation."

The liability of the BancoKentucky Company for the assessment levied against it depends upon whether or not it was a stockholder within the meaning of this statute.

On April 22, 1927, a trust agreement was executed by certain owners and holders of capital stock of the Louisville Trust Company and the National Bank of Kentucky and six individuals referred to therein as "trustees." The purpose actuating the signers of the trust agreement was stated thus in the agreement:

"The undersigned owners and holders of the shares of capital stock of The National Bank of Kentucky of Louisville (organized under the National Banking Act), and owners and holders of the capital stock of The Louisville Trust Company (organized as a Trust Company under the laws of Kentucky), looking to the best interests of the respective institutions as separate corporate entities, and of each stockholder therein, have determined that such interests require closer co-operation of such Bank and Trust Company, to be of greater service to their respective patrons, and in order to secure

such co-operation have agreed upon the plan hereinafter set forth for creating a trust estate to consist of their respective shares of stock in the Bank and in the Trust Company.''

The owners of approximately 98 per cent. of the total outstanding stock of the trust company and 95 per cent. of the total outstanding stock of the National Bank of Kentucky assigned and transferred their shares of stock to the trustees named in the trust agreement to be held as one indivisible trust. The BancoKentucky Company subsequently acquired substantially all of the outstanding participation certificates by exchanging its stock therefor. The trust agreement prescribed in detail the powers and duties of the trustees, and the extent of those powers controls the establishment of the liability imposed by section 613 of the Kentucky Statutes. The primary purpose of the stockholders of the National Bank of Kentucky and the Louisville Trust Company was to obtain a closer co-operation between the two institutions, one a national bank and the other a state trust company, and since this could not be accomplished by a merger, the plan outlined in the so-called trust agreement was devised to accomplish substantially the same result. Under the plan, every stockholder would own a proportionate interest in each of the institutions, and would share in their earnings accordingly. The stockholders accomplished the affiliation of the two institutions by depositing their shares of stock with the six trustees named in the trust agreement, and receiving participation certificates in return for the stock pooled by them. Under the trust agreement, an advisory committee composed of the then directors of the bank and the trust company was created, and, while the trustees were invested with certain powers, it was provided that these powers could be exercised only with the approval in writing of the advisory committee. The only powers which the trustees could exercise without restriction were merely nominal, such as the power to receive and hold the stocks delivered to them, to issue trustees' participation certificates therefor, and to receive dividends and pay them to the holders of the trustees' participation certificates. In every instance where more than nominal power and authority was to be exercised, the action of the trustees was under the control of the advisory committee, or the holders of the partici-

pation certificates. The trustees held the stock of the bank and the trust company, and also the stock in other similar corporations which might be purchased from time to time with the consent of the advisory committee, but the owners of the participation certificates reserved the right to direct the trustees in writing how they should vote the proportionate stock owned by such certificate holders in any corporate meeting. Thus, the election of directors of the separate institutions, in which the shares of capital stock had been pooled, was left in the control of the old stockholders who had deposited their stock with the trustees and received in lieu thereof participation certificates.

The trustees were marionettes dancing when the strings were manipulated by the certificate holders, or their agent, the advisory committee. The action of the trustees in every material respect was subject to the control and direction of the certificate holders, which removes this case from the operation of the rule invoked by appellants that the beneficiary of an active indivisible trust estate has no liability under the statute. Here the six individuals, with whom the stock of the two institutions was deposited, though referred to as "trustees," were invested with none of the important attributes of a trustee. At most, they were agents of the certificate holders with limited powers.

A careful reading of the trust agreement discloses that it was not the purpose of the stockholders of the two institutions to devise a scheme to avoid the statutory double liability, but the agreement was an honest effort to accomplish a closer co-operation between a national bank and a state trust company. The stockholders who became parties to the agreement expressly assumed the liability imposed by the state and federal statutes. Section 3 of article 9 reads:

> "Each owner of a Trustees' Participation Certificate issued hereunder shall be subject to the same liability thereon as he would have been subject to in case he had been the owner of record of such proportionate part of the shares held by the Trustees in any corporation as the number of shares called for by his Trustees' Participation Certificate bears to the whole number of shares covered by all outstanding Trustees' Participation Certificates;

and to such extent he shall indemnify and hold harmless the Trustees owning such stock from any loss or liability on account of being the holders or owners thereof. The measure of liability assumed hereunder shall be the same as that provided by law with reference to the holders of stock in any particular corporation in which the Trustees may hold stock as is provided by law with reference to the holders of such stock, and no more.''

Our conclusion that the holders of the trustees' participation certificates were the beneficial owners of the pooled stock of the Louisville Trust Company and the National Bank of Kentucky, and chargeable as to the trust company stock with the liability imposed by section 613 of our Statutes, is not without the support of persuasive authority. In a proceeding in the United States Court for the Western District of Kentucky in which the same trust agreement was involved, the National Bank of Kentucky recovered judgment against the BancoKentucky Company for double statutory liability under the federal statutes applying to national banks which are similar in all respects to section 613 of the Kentucky Statutes. 12 U. S. C. A. secs. 64-66. The judgment of the District Court was affirmed by the United States Circuit Court of Appeals for the Sixth Circuit. Laurent v. Anderson, 70 F. (2d) 819, 823. In the course of the opinion it was said:

"To determine liability under section 64, the courts must disregard the forms of transactions and ascertain who is the real and beneficial holder of the stock. It has long been settled that the real and beneficial holder of bank stock is primarily liable for the double liability.

"The case of Pauley v. State Loan and Trust Co., 165 U. S. 606, 17 S. Ct. 465, 41 L. Ed. 844, establishes the rule. In that case Mr. Justice Harlan reviewed all of the previous cases relating to the liability of shareholders, and one of the propositions announced was (page 619 of 165 U. S., 17 S. Ct. 465, 470): 'The real owner of shares of the capital stock of a national banking association may, in every case, be treated as a shareholder within the meaning of section 5151 (now title 12, sec. 64).' There never has been any departure from this rule.

So lately as Early v. Richardson, 280 U. S. 496, 499, 50 S. Ct. 176, 177, 74 L. Ed. 575, 69 A. L. R. 658, it was said: 'That the actual owner of the stock may be held for the assessment, although his name does not appear upon the transfer books of the bank, is well settled.'

"A trust (Corker v. Soper, 53 F. (2d) 190 (C. C. A. 5), certiorari denied Corker v. Howard, 285 U. S. 540, 52 S. Ct. 313, 76 L. Ed. 933) may not be employed to evade double liability. It was said in Lewin on Trusts (13th Ed.) p. 113: 'The court will not permit the system of trusts to be directed to any object that contravenes the policy of the law.' In a learned article in 8 Quarterly Law Review, 220, 225, the author reaches the conclusion: 'If, on the other hand, the so-called trustee is a mere nominee or "dummy," put forward for no other purpose but to screen the so-called cestui que trust from responsibility, the relation between them is that of principal and agent and the principal is liable.' Quoted 1 Mechem on Agency (2d Ed.) p. 28, note 31.

"And it was said in Pauley v. State Loan Co., supra, at page 623 of 165 U. S., 17 S. Ct. 465, 471: 'The object of the statute is not to be defeated by the mere forms of transactions between shareholders and their creditors. The courts will look at the relations of parties as they actually are, or as, by reason of their conduct, they must be assumed to be, for the protection of creditors.'

"The evidence establishes that Banco was in every sense the true and beneficial owner of the national bank stock involved; the trustees holding only the bare legal title to the stock. * * *

"The petition and especially the evidence sustain recovery against Banco as the real and beneficial owner under Section 64 of the National Banking Act (12 U. S. C. A.). It was not necessary that the receiver rely upon Banco's agreement to pay the double liability. The allegations of the petition relating to such agreement were perhaps in the nature of anticipation of Banco's defense. However, had it been necessary to recover upon the pro-

vision of the contract assuming liability, the decisions of this court would permit such recovery.''

Appellants' contention that the assessment against the BancoKentucky Company must be limited to one-half of the total amount of the stock of the Louisville Trust Company, or 8,750 shares, is based on that part of section 609 of the Kentucky Statutes which reads:

''Nor shall any person, directly or indirectly, hold or own more than one-half of the capital stock of a corporation exclusive of the stock held as collateral.''

It is argued that this act is a specific limitation upon the powers of the Louisville Trust Company to issue, and upon the corporate capacity of the BancoKentucky Company to hold, in excess of 8,750 shares. The question of ultra vires acts on the part of the trust company is not involved. It did not issue the stock originally to the BancoKentucky Company, and, in so far as the record discloses, the stock was legally issued in the first place. After the Louisville Trust Company had legally issued 17,500 shares of stock, more than one-half of them passed into the ownership of the Banco-Kentucky Company. The excess stock was not rendered void when it was acquired by the BancoKentucky Company. The acquisition by it of more than 50 per cent. of the stock was not strictly ultra vires, but was an act in violation of the prohibitory provision in section 609. This provision does not declare that any stock held in violation thereof shall be void, or that no liability shall attach to its ownership. Sections 609 and 613 must be read together to arrive at the legislative intent. Section 613 makes every owner of trust company stock liable to an assessment to the extent of the amount of his stock at par value for the benefit of its creditors. No exception is made. The provision in section 609 limiting the amount of stock that may be held by one person was intended to spread the liability, and thus afford greater protection to the creditors. The purpose of the two statutes will then be thwarted if double liability is not imposed merely because one person has become the owner of more than 50 per cent. of the capital stock. It was not the intention of the Legislature that a person who acquired more than 50 per cent. of the capital stock of a trust company should profit by his own wrongful

act, and that his excess stock should not be assessed. The purpose of the limitation was to protect the creditors of trust companies, but the construction which appellants seek to place on the act would result in depriving the creditors of the very protection the Legislature intended to afford them.

The judgment is affirmed.