## NETTLES v. RHETT et al.

### No. 4241.

Circuit Court of Appeals, Fourth Circuit.
Jan. 4, 1938.

John I. Cosgrove, of Charleston, S. C. (Eugene S. Blease, of Newberry, S. C., and Stephen Nettles, of Greenville, S. C., on the brief)', for appellant.

Donald Russell, of Spartanburg, S. C., and Frederick H. Horlbeck, of Charleston, S. C. (Mitchell & Horlbeck, of Charleston, S. C., George L. Shearer, of New York City, and Stoney, Crosland & Pritchard, of Charleston, S. C., on the brief), for appellee Bernard M. Baruch.

Hagood, Rivers & Young, of Charleston, S. C., for appellee Cogswell's Estate.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The receiver of the stockholders' liability of the Peoples State Bank of South Carolina, an insolvent corporation in process of liquidation, brought suit in the state court against the stockholders of the Peoples Investment Corporation of South Carolina, a holding company, in order to secure a decree that they were the true owners of 74,000 shares of stock of the

bank of the par value of $10 standing in the name of the holding company, and as such required to pay the sum of $740,000 on account of the extra stockholders' liability imposed by the Constitution and laws of the State of South Carolina. The case was subsequently removed to the United States District Court on the ground that there was a separable controversy between the receiver and certain of the nonresident defendants. Nettles, Receiver v. Rhett, 14 F.Supp. 594. The liability of the holders of the stock of the bank for the amount of the assessment was not questioned, but the defense was that the liability rests upon the Peoples Investment Corporation, the registered holder, and not upon the shareholders thereof.

The Peoples State Bank had a capital of $2,000,000, a principal place of business at Charleston, S. C., and forty-four branches throughout the state. It closed its doors on December 31, 1931, by reason of insolvency. On April 7, 1932, certain depositors brought a suit in the state court, entitled Biltrite Building Company vs. Anne M. Adams, et al., on behalf of themselves and others in like plight against the stockholders of record, including the Peoples Investment Corporation, to enforce the liability attaching to the shares under the state law. With regard to the Peoples Investment Corporation and other corporate stockholders, it was alleged that they were holding companies, without substantial assets, which were organized and used as a shield against the liability attaching to the holders of the stock, who were nevertheless liable to respond to the assessment to the same extent as if the holding companies had not been formed; and that the plaintiffs were entitled to a disclosure of the real parties in interest unless the liability on the shares in the names of the holding companies should be fully paid and satisfied. Judgment against the Peoples Investment Corporation for $740,000 was rendered on May 14, 1934, and an execution thereon was returned nulla bona on March 19, 1935.

When this suit was instituted, the state court appointed the plaintiff in the instant case a receiver to collect the stockholders' liability in accord with the South Carolina practice; and in an original proceeding in the Supreme Court of South Carolina, Biltrite Building Company v. Elliott, 166 S.Ct. 534, 165 S.E. 340, the regularity of the appointment and the author-

ity of the receiver to proceed were established. Thereafter, on March 16, 1935, the receiver was authorized by order of the state court to proceed against the stockholders of the holding companies and accordingly the pending suit was instituted on May 9, 1935. In the meantime, the receiver had secured a judgment against the stockholders of another corporation holding stock of the bank, and on appeal in this case, Nettles v. Sottile, 184 S.C. 1, 191 S. E. 796, the Supreme Court of South Carolina overruled, amongst others, the contention that the suit was barred because the depositors had already sought and obtained a judgment upon the same liability against the holding company in Biltrite Building Company v. Adams. This ruling in our opinion should be followed in the pending case. There was no election of an inconsistent remedy in the earlier suit, but, on the contrary, an express declaration that the holding company was merely the pretended owner of the stock and should be required to disclose the true owners unless the liability should be satisfied without further action. See, also, Continental National Bank & Trust Co. v. O'-Neil, 7 Cir., 82 F.2d 650. Compare Pottorff v. Dean, 1 Cir., 77 F.2d 893.

The Peoples Investment Corporation was chartered on March 29, 1929, with a capital of $1,000,000, divided into 5,000 shares of common and 5,000 shares of preferred stock of the par value of $100 per share. Thirteen holders of the common stock, who have been styled the Rhett group in this litigation, and ten holders of the preferred stock were served with process and the receiver now seeks to hold them liable for so much of the sum of $740,000 as is proportioned to their shares in the holding company. The manner in which these persons became holders of stock in the Investment Corporation and in the Peoples State Bank is shown by the following summary of the events which led up to the formation of the bank:

In 1928 the Rhett group were interested in banking as officers and stockholders of the Peoples National Bank (later the Peoples First National Bank), which operated through a principal office and local branches in the city of Charleston. In the latter part of the year penetration of the field outside of Charleston was begun. The Peoples Bank of Columbia was chartered with a capital of $100,000 and a surplus of $20,000; and in 1929 the capital was suc-

cessively increased to $150,000 and $500,000, the name being changed on May 14, 1929, to the Peoples State Bank of South Carolina. At or about this time the corporation was merged and consolidated with ten other banks of the state, and by the end of the year 1929 the capital had been again increased to $1,000,000 and finally to $2,000,000; and it was resolved to purchase the assets of the Peoples First National Bank of Charleston and change the principal place of business to that city.

The Rhett group in the meantime had bought stock in other banks throughout the state, acting through the organization of the Peoples State Bank and of the Peoples Securities Company, a subsidiary organized in 1923. The officers and directors of both of these corporations were to a large extent the same persons. The subsidiary on January 31, 1929, had a capital of $181,700, but owned bank stocks in the sum of $599,531.43. In order to relieve the Securities Company of such a large amount of bank stock, the Peoples Investment Corporation was formed as above set out. It was empowered by its charter to buy, sell, and own stocks, bonds, notes, mortgages, and choses in action of all sorts and, indeed, any kind of property or thing of value; but it never owned any assets other than bank stock. The entire common stock of $500,000 was subscribed by fourteen persons, members of the Rhett group, all of whom except the Peoples Securities Company were officers, directors, or employees of the Peoples State Bank. A 40 per cent. call was paid in cash by two subscribers, and by the remaining twelve through the transfer of stock of the Peoples Bank of Columbia (later the Peoples State Bank) or in a few instances through the transfer of shares of other South Carolina State banks, balances one way or the other being paid in cash. Subsequent calls, making a total of 60 per cent., were paid in cash which was borrowed in large part, it would seem, from the Peoples State Bank.

The preferred stockholders of the Peoples Investment Corporation, twenty-three in number, paid for their stock in cash or by the transfer to it of stock of the Peoples Bank of Columbia or of the Bank of Georgetown (South Carolina).

In March and April, 1929, the Investment Corporation purchased shares of the National State Bank and of the Peoples Bank of Columbia, and thereafter shares of banks scattered throughout the state were continuously purchased so that the banks became associated with the Peoples Bank chain.

Dividends were paid to the stockholders of the holding company out of the dividends received by it on the bank stock which it held. In the two years of its existence it received from the Peoples State Bank three dividends in the aggregate sum of $77,700. It paid one dividend of 4 per cent. to the common stockholders, amounting to $10,013.76, and four semiannual dividends of 6½ per cent. to preferred stockholders in 1930 and 1931, amounting in the aggregate to $42,895.14.

The Investment Corporation never dealt in, bought or sold, or owned any other stock than the shares of banks which had been or were being taken into the Peoples Bank chain; and finally in 1930, when the merger was complete, it held and owned solely the 74,000 shares of the Peoples State Bank stock, which are the subject of this suit, and continued to hold them until the bank closed. In short, the holding company was the instrumentality that was used to finance the expansion of the Peoples State Bank and thereafter to control it in association with the holdings of the Peoples Securities Company and the individual holdings of the officers and directors of the bank.

It will have been observed that the creation of the Peoples State Bank, with headquarters in Charleston and numerous branches throughout the state, had been begun and in large measure completed before the collapse of the stock market in the fall of 1929. Having this in mind, the District Court in its opinion made the following statement with regard to the condition of the banks which entered into the merger: "The banks whose stocks were so acquired, and in which additional shares were subsequently acquired from various sources by investment corporation, were subsequently absorbed by and merged with Peoples State Bank. The agreed value of these stocks in each instance and the amount paid therefor by the investment corporation was well above par, and there is no evidence to refute the appearance at that time of the complete and entire stability and solvency of each of such banking institutions."

Upon the facts hereinbefore set out, the District Court concluded that the liability of the stockholders of the holding company had not been established and the

bill of complaint was therefore dismissed. The ground of the decision was that the Peoples Investment Corporation was organized in good faith to market and hold bank stocks in an orderly manner and to assist in an expansion of the Peoples State Bank and not for the purpose of evading the statutory liability upon the shares of the stock of the bank.

The pertinent provisions of the Constitution of South Carolina and of the statutes of that state are as follows:

Article 9, section 18 of the South Carolina Constitution: *"Liability of Stockholders—In Banks.*—The stockholders of all insolvent corporations shall be individually liable to the creditors thereof only to the extent of the amount remaining due to the corporation upon the stock owned by them: Provided, That stockholders in banks or banking institutions shall be liable to depositors therein in a sum equal in amount to their stock over and above the face value of the same."

Section 7868, Civil Code of South Carolina, 1932: *"Liability of Stockholders of Insolvent Banks.*—The stockholders of all insolvent banks and banking institutions, whether heretofore or hereafter incorporated under Act of Assembly of this State, either general or special, shall be individually liable to the creditors thereof, other than depositors, only to the extent of the amount remaining due to the corporation upon the stock owned by them: Provided, That stockholders in all such banks and banking institutions shall be liable to depositors therein in a sum equal in amount to their stock over and above the face value of the same."

Section 7677, subd. (5), Civil Code of South Carolina, 1932: *"(5) Not to Be Used in Banking.*—No part of the capital stock or any of the funds of such corporation shall, at any time during the continuance of their charter, be used or employed, directly or indirectly, in banking operations, or for any purpose whatsoever inconsistent with the provisions of their respective charters."

▪ The prohibition contained in section 7677, subdivision 5, of the South Carolina Code of 1932, is pertinent to this case. It provides that no part of the capital stock or any of the funds of a corporation formed under the general laws of South Carolina shall be used or employed directly or indirectly in banking operations.

The Supreme Court of South Carolina in applying this statute has held that the acquisition of bank stock by an ordinary business corporation is an ultra vires act which the board of directors can neither authorize nor ratify; and, although in South Carolina a corporation cannot avail itself of the defense of ultra vires in a suit on a contract performed by the other party which does not involve moral turpitude or offend any express statute, yet, when the contract is prohibited by statute, it cannot be made the foundation for a liability of the corporation and the court will leave the parties where it finds them. The court specifically held that a real estate and loan company was not liable to the creditors of a bank for an assessment on shares of the bank's stock which it had purchased and on which it had collected dividends. White v. Bank, 66 S.C. 491, 45 S.E. 94, 97 Am.St.Rep. 803. The same rule is established in the federal courts where the doctrine of ultra vires is more rigidly applied. See Concord First Nat. Bank v. Hawkins, 175 U.S. 364, 19 S.Ct. 739, 43 L.Ed. 1007; Reconstruction Finance Co. v. Rawlings, 5 Cir., 76 F.2d 566, 98 A.L.R. 642; Dunn v. O'Connor, 67 App. D.C. 76, 89 F.2d 820; Awotin v. Atlas Exchange Nat. Bank, 295 U.S. 209, 213, 55 S.Ct. 674, 676, 79 L.Ed. 1393. The decision of the Supreme Court of South Carolina in White v. Bank, supra, is cited with approval in the more recent case of Alderman v. Alderman, 178 S.C. 9, 38, 181 S.E. 897, 105 A.L.R. 102, and it is suggested that the reason for section 7677 may be found in the fact that in South Carolina a different degree of responsibility is required of shareholders of state banks, that is to say, the extra liability, and that it would nullify this constitutional requirement if business corporations were permitted to engaged in banking.

▪ In view of these established rulings, an extraordinary result would follow the adoption of the theory that the appellees have no liability for the assessment upon the stock of the bank in that it was owned by the holding company and registered in its name. The holding company being relieved of liability by the prohibitory statute, and its shareholders being relieved because the bank stock was not held in their names, neither holding company nor stockholders could be compelled to respond to the receiver's demands, and the purpose of the Constitution and of the statute would

be effectually evaded. This result is impossible for, as stated in Conner v. McSween, 164 S.C. 438, 162 S.E. 434, 436: "It is self-evident that, the statutory liability being contractual, a stockholder cannot divest himself of it by a transfer of his stock to one who is legally incapable of assuming it; otherwise the supposed protection to depositors would be a myth, as judicious transfers of the stock would practically obliterate the liability." See, also, Aldrich v. Bingham, D.C., 131 F. 363; Riley v. Bondi, 8 Cir., 64 F.2d 515.

Moreover, the liability would be nullified with equal certainty in the pending case even if there were no statutory prohibition against the corporate holding of bank stocks, because the Investment Corporation had no other property than the stock of the bank when the work of merger and consolidation was completed. An evasion of stockholder's liability effected by the transfer of the stock of a failing bank to a person known to be financially irresponsible is not countenanced, McDonald v. Dewey, 202 U.S. 510, 26 S.Ct. 731, 50 L. Ed. 1128, 6 Ann.Cas. 419, and we find that the lack of other assets by the holding company has been generally considered as a weighty circumstance pointing to the liability of its stockholders in the cases cited in this opinion.

There is indeed no answer to the charge that it lies easily within the power of the stockholders of a South Carolina bank to avoid the burden of the added liability, if the device of illegally placing his stock in a holding company meets with the approval of the courts. Quite the opposite conclusion has been reached elsewhere. Even in the absence of a prohibitory statute, it has been quite generally held in recent bank cases under varying circumstances that the stockholders in a company, which holds for them the stock of a bank, are the real beneficial owners of the stock, and, as such, are subject to the assessment when the bank fails, notwithstanding the record ownership or title. This is merely an application of the rule which, before the adoption of the holding company device in banking circles, had announced the liability of the real owner of bank stock, although not registered as such on the bank's books, Pauly v. State Loan & Trust Co., 165 U.S. 606, 17 S.Ct. 465, 41 L.Ed. 844; Ohio Valley National Bank v. Hulitt, 204 U.S. 162, 27 S.Ct. 179, 51 L.Ed. 423; and the rule has been recently applied, not only in cases in which an actual intent on the part of the organizers of the holding company to evade an impending statutory liability has been found to exist, as in Corker v. Soper, 5 Cir., 53 F.2d 190; Durrance v. Collier, 5 Cir., 81 F.2d 4; Brusselback v. Cago Corp., 2 Cir., 85 F.2d 20; Harris Investment Co. v. Hood, 123 Fla. 598, 167 So. 25, but also where the holding company was formed for the bona fide purpose of saving the bank or bringing about and controlling an expansion of its business, Metropolitan Holding Co. v. Snyder, 8 Cir., 79 F.2d 263, 103 A.L.R. 912; Barbour v. Thomas, 6 Cir., 86 F.2d 510; Fors v. Farrell, 271 Mich. 358, 260 N.W. 886.[1]

In Metropolitan Holding Co. v. Snyder, 8 Cir., 79 F.2d 263, 267, 103 A.L.R. 912, it was said: "It can scarcely be said that individual appellants, since they were directors of a national bank, did not know that the shares of national bank stock carried this statutory liability; if they did not have actual knowledge, they were, at least, presumed to have this knowledge. With this knowledge they purchased the shares and placed the title thereto in a corporation against which they knew the efforts of creditors to realize the statutory liability on the shares, in case of ultimate insolvency of the bank, would be absolutely futile. The incorporators of the holding company may have acted in good faith according to their standards of right, but under the facts in this case, as disclosed by the record, they must be judged by the legal effect of what they deliberately did. If they were the beneficial owners of the shares in question and the corporation was merely an instrumentality set up for their own convenience in holding the title to the shares, then in equity it matters not what design, good or evil, prompted their actions; from either source, the effects of their actions—the avoidance of a statutory liability—are the same."

---

[1] Similar results have been reached when the stockholders of a bank have deposited their stock with trustees in order to facilitate the joint operation or the merger of banks. Laurent v. Anderson, 6 Cir., 70 F.2d 819; Banco Kentucky Receiver v. Louisville Trust Co.'s Receiver, 263 Ky. 155, 92 S.W.2d 19; O'Keefe v. Pearson, 1 Cir., 73 F.2d 673, 97 A.L.R. 1243. See, also, 46 Yale Law Journal 718, and annotation, 103 A.L.R. 921.

In Fors v. Farrell, 271 Mich. 358, 375, 260 N.W. 886, 891, it was said: "It all comes to this: That neither an individual nor a corporation can through a trust arrangement or by other indirect means or circumlocution possess as an owner and enjoy the beneficial interest in bank stock without assuming the contingent liability of a stockholder's assessment imposed by law. To hold otherwise would be to nullify the protection given the bank creditors by the statute imposing double liability."

In some of the cited cases, the stockholders of the holding company had entered into an express agreement to pay the liability on the shares of the bank in case of insolvency; but, while this circumstance was considered as showing that the stockholders in the holding company were the real owners of the shares of the bank, it was not thought essential to the liability. See Barbour v. Thomas, 6 Cir., 86 F.2d 510, at page 518; Laurent v. Anderson, 6 Cir., 70 F.2d 819, at page 824.

█ If the shareholder in a bank transfers his stock to a holding company that has no other assets than the stock of the bank and, when a crash comes, sets up the holding company as a shield from assessment of the added liability, it is idle for him to suggest that at the outset he did not contemplate such a possibility, and in the courts of justice his assurance to this end, even if true in fact, will not avail. Some of the cases reach this result by resort to the theory that the circumstances justify the ignoring of the corporate entity; but there seems to be no necessity to adopt this view. The holding company may be frankly recognized as a convenient instrumentality adopted by the stockholders for legitimate ends (in the absence of a prohibitory statute) without affecting their liability in the case of insolvency to pay again the face value of their stock, just as if it were being held for them by a natural person.

█ We do not find the law otherwise in South Carolina. The question was considered in Nettles v. Sottile, 184 S.C. 1, 191 S.E. 796, in which the plaintiff in the instant case brought suit against another holding company formed to hold the stock for the Peoples State Bank. It was found as a fact that the holding company was created to hold as its only asset 900 shares of stock belonging to a stockholder of the bank for the purpose of avoiding the stat-

utory liability about to attach to it. Confining itself to these facts, the Supreme Court specifically held that the ownership of bank shares by a private corporation in South Carolina is illegal and void, and that, when the corporate form of organization is adopted in an endeavor to evade a statute or modify its intent, the courts will disregard the corporation and look to the substance or reality of the matter. The court, however, declined to go so far as to say that the liability always attaches to stockholders in a holding company regardless of the particular plan or scheme in use. It was indicated that this proposition was too broad; and, as it was not necessary to a decision in the case before it, the question was proposed and left unanswered as to whether equity would impose the statutory liability upon the stockholders of a corporation doing a lawful investment business who were ignorant of the fact that the corporation had invested some of its funds in the stock of a bank.

There is no inconsistency between this pronouncement and the position of the receiver in the pending case. It is not essential to his case to say that the statutory liability should be imposed upon stockholders ignorant of the fact that the holding company has bank stock amongst its assets. Indeed, it has been held that a transfer of bank stock to a person without his knowledge does not of itself impose upon him the liability attached by law to the position of a stockholder, Keyser v. Hitz, 133 U.S. 138, 10 S.Ct. 290, 33 L.Ed. 531; Early v. Richardson, 280 U.S. 496, 499, 50 S.Ct. 176, 74 L.Ed. 575, 69 A.L.R. 658; and it is conceivable that this ruling may be extended to one who purchases shares in a general investment corporation unaware that it holds bank stocks. But no such contention of innocence tenable in the pending case where the holding company was designed primarily to hold bank stocks during the organization of a merger, and in fact held only the stock of the merged bank at the time that the liability attached.

█ In the view which we have taken, no distinction need be made between the liability of common and preferred stockholders. Given the fact that the holding company invested in nothing but bank stock and finally held nothing but stock of the bank created by the mergers, we cannot assume that the preferred stockholders had no knowledge of the condition of their

investment. The natural inference would be quite to the contrary despite the fact that the charter powers of the corporation included the power to buy and sell stocks and bonds of all sorts; and the failure of the defendant stockholders to offer testimony on the point is consequently not surprising.

The preferred stockholders had no right to vote under the charter except on the question of increasing the capital stock, unless four dividend periods should have been passed without payment of dividends. But this fact did not in any way effect the additional stockholders' liability, for the statute recognizes no distinction between classes of stock; and stockholders gain no immunity from assessment when they contribute capital to an enterprise and voluntarily relinquish the active control to holders of the common stock in order to assume a preferred status.

It is of no moment that some of the preferred stockholders acquired their shares for cash and did not previously own stock of the bank. They became none the less the real parties in interest in the Peoples State Bank; and, if the ownership of the bank stock by the holding company had been declared invalid, it would have resulted, not in the distribution of the stock among the original holders who had sold their rights, but to the persons then owning stock in the holding company. O'Keefe v. Pearson, 1 Cir., 73 F.2d 673, 677, 97 A. L.R. 1243.

In the case of Bernard M. Baruch, one of the holders of preferred stock, there is additional evidence that he was aware of the nature of the enterprise and co-operated in its organization. The first meeting of the Investment Corporation was held on March 29, 1929, and all of the common stock was promptly subscribed by persons active in promoting the merger. On May 1, 1929, Mr. Baruch entered the corporation by the purchase of $100,000 of preferred stock for cash, and on the same day sold to the holding company for $21,-600 in cash 180 shares of the stock of the Georgetown Bank, one of the banks included in the consolidation. On April 29, 1930, he sold 250 shares of his preferred stock to the Peoples State Bank, leaving 750 shares of the stock of the holding company in his name at the time that the bank closed. From these transactions we have no doubt that he was aware of the nature of the holding company's business and that he was a real party in interest to the extent of 750 shares of its stock. Whether or not he was relieved from the statutory liability on the 250 shares of stock sold by him to the Peoples State Bank, whereby the bank became virtually the owner of its own stock, is a question not now before this court.

The decree of the District Court is reversed and the case remanded for further proceedings in accordance with this opinion to the end that a decree may be entered against the common and preferred stockholders of the Peoples Investment Corporation who were served with process for such amounts as are proportioned to their respective holdings of stock therein.

Reversed and remanded.