METROPOLITAN HOLDING CO., Inc., et al.
v. SNYDER.*
No. 10251.

Circuit Court of Appeals, Eighth Circuit.
Sept. 25, 1935.

*Rehearing denied Nov. 25, 1935.

264.

Frank Y. Gladney, of St. Louis, Mo. (James C. Jones, Lon O. Hocker, James C. Jones, Jr., Sullivan, Reeder & Finley, and Jones, Hocker, Gladney & Jones, all of St. Louis, Mo., on the brief), for appellants.

Arthur J. Freund and Sam Elson, both of St. Louis, Mo., for appellee.

Before STONE and SANBORN, Circuit Judges, and RAGON, District Judge.

RAGON, District Judge.

This is an appeal from a decree in a suit brought by the receiver of the Vandeventer National Bank of St. Louis to fasten a stockholder's liability upon the individual appellants as beneficial owners of 720 shares of stock in the bank, which was taken over on January 2, 1932, for liquidation by the comptroller of the currency. The facts are not in substantial dispute. The controversy is over the inferences to be drawn from the facts.

The Vandeventer National Bank was organized December 31, 1928, and continued to operate until January 2, 1932, when, at the request of the board of directors, it was taken over by the comptroller of the currency. It had a capital stock of $200,000.

The annual examination of the bank for 1931 was begun on March 26th and concluded on April 10th. During this examination it was found the bank was experiencing financial difficulties. There was an item of $87,437 representing the depreciation in the value of bonds carried by the bank which it was necessary to charge off. Certain charge offs were also made by reason of losses on loans which amounted to $11,957. By reason of the losses due to bond depreciation and the losses on loans, there was a capital impairment of $34,796, and an entire elimination of the surplus and undivided profits account which had amounted to $65,599. Approximately 43 per cent. of the total loans of the bank, amounting to $1,529,331, were criticized by the examiner as unsatisfactory for one reason or another.

The bank examiner discussed with the president of the bank these items of loss as they developed during the progress of the examination. The president of the bank in turn discussed these conditions with the bank's discount committee and finally reported the findings and criticisms of the examiner to a regular meeting of the board of directors of the bank. The conditions of the bank as disclosed by the examiner's report obviously made it necessary to restore the impaired capital of the bank by a voluntary contribution of the shareholders or some other means satisfactory to the comptroller of the currency. At the time the bank was examined, 1,315 shares of its stock were held by the Vandeventer Securities Company which had pledged the shares for a loan to the brokerage firm of Lorenzo E. Anderson & Co., which latter firm was insolvent and in process of liquidation by the Reorganization Investment Company, as liquidator. The Vandeventer Securities Company was financially unable to make a voluntary contribution on its part to repair the impairment of the bank's capital according to a letter addressed to the comptroller by appellants on May 12th.

On April 16, 1931, appellant Corby was advised that the 1,315 shares of the bank stock were for sale. On the next day a meeting of all the individual appellants, except one, was held in the office of appellant Cave. At this meeting Corby was by the group authorized to enter negotiations with the Reorganization Investment Company, and on April 29th an agreement was reached whereby the shares were to be purchased at $80 per share. A meeting of the individual appellants on the same date confirmed the deal made by appellant Corby and arranged the details of the purchase.

At this meeting on April 29th it was proposed that a corporation be formed to handle the transaction. This corporation, the stock of which was to be owned by the individual appellants, was to purchase the 1,315 shares of bank stock at $80 a share and resell it at $110 a share, paying the $30 profit into the bank for the purpose of restoring its impaired capital. The total capital stock was to be $80,000, divided into 800 shares of the par value of $100 each. Accordingly, on May 2d, articles of association for the incorporation of the Metropolitan Holding Company, Inc., were executed. On May 5th the secretary of state issued a certificate of incorporation to this holding company. The sum of $57,200 was paid into the treasury of the

holding company by the individual appellants between May 8th and May 11th, and certificates of stock therefor were issued to them. To meet the remaining amount of the purchase price of the 1,315 shares of stock, which was $105,200, the corporation borrowed $75,000 from the Mississippi Valley Trust Company and the note evidencing this indebtedness was guaranteed by individual appellants.

The 1,315 shares of the bank stock were transferred on the books of the bank to the holding company on May 14th, and shortly thereafter the sum of $34,796 was withdrawn from the account of the holding company and paid into the undivided profits account of the bank to apply against the deficiency in the bank's capital. About the time of the transfer of the shares on the bank's books, the officers and employees of the bank, in accordance with instructions and directions of the individual appellants, began a campaign to dispose of the shares of the bank stock standing in the name of the holding company. Five hundred and ninety-five shares of the stock were sold to outsiders between May 14 and June 12, 1931. The remaining 720 shares were standing in the name of the holding company when the bank was taken over by the comptroller of the currency.

On February 24, 1932, the comptroller of the currency determined that it was necessary to enforce the statutory liability of the stockholders of the bank and ordered an assessment to the extent of the par value of the shares and directed the receiver to take all necessary proceedings to enforce this liability. Notice of this assessment was sent to the holding company and to individual appellants, calling upon them to pay $72,000, the amount levied against the 720 shares. Upon their failure to pay, the receiver instituted this proceeding in equity for the collection of the assessment.

The trial court rendered several judgments against the individual appellants in amounts which bore the same proportion to $72,000 as the cash which each appellant paid into capital stock of the holding company bore to the total cash capital which was $57,200. From this judgment, the appellants, in due form, prosecute this appeal.

It was the contention of appellee in the trial court, as it is in his presentation of his case on appeal, that the individual appellants, having bought and paid for the 720 shares of stock involved in this controversy, are the beneficial owners thereof, and that the organization of the corporation by them was for the purpose of transferring these shares to it, thereby avoiding a personal assessment, and that their actions in so doing constituted a fraud upon the law. The individual appellants contend that no such purpose motivated their actions in the formation of the corporation, but that they had a legal right to organize it, and that it could legally hold this and other stocks under the laws of Missouri, and that at the time the things complained of were effected, the bank was solvent, and that they had no knowledge of the existence of the various items which had impaired the bank's capital.

The question to be determined is whether, under the plan adopted by the individual appellants to restore the impaired capital of the bank, they became the beneficial owners of the stock, and the holding company a mere agency in carrying out the transaction, or whether the holding company became the actual owner and the relation of the individual appellants to the plan was solely that of stockholders in the holding company.

The individual appellants, with the possible exception of one, had knowledge of the bank's condition as early as April 17, 1931, when they had a regular meeting after the bank's examination had been concluded on April 10th. It is hardly conceivable that these men as directors of the bank would not have had some knowledge of the bank's condition as it developed during the course of the examination. They knew that a pro rata assessment would be required under 12 USCA § 55, or that a voluntary contribution would have to be effected, and that the Vandeventer Securities Company was not in a financial condition to make such a contribution. While the conditions of the bank perhaps did not justify the belief that the bank would have to close its doors, yet the economic conditions of the country made this capital impairment embarrassing and it had to be restored or serious financial losses would be sustained. Through appellant Corby, acting for himself and other individual appellants, negotiations for the stock held by the Vandeventer Securities Company were commenced on April 16th and concluded with the purchase on the 29th day of April. The individual appellants, who were directors in the bank, formed the holding company, put $57,200

of their money in its stock, and then extended their credit by borrowing $75,000 to secure the balance of the purchase price of the stock. All these activities were carried on by the individual appellants, and there is not shown in the record any activity on the part of the holding company through its officers or agents. · It never made effort to buy other stock or to sell the stock in its name; the shares sold were sold by employees of the bank.

The plan of the individual appellants was to make good the deficit in the bank's capital. Had their plans succeeded, the bank's capital would have been repaired, the 1,315 shares of stock would have been sold, the Mississippi Valley Trust Company would have been paid, they would have avoided a substantial personal loss necessitated by a voluntary contribution, and the holding company would have been dissolved; all accomplished with little or no financial loss to the individual appellants. That they honestly indulged the hope that this could and would be done is evidenced by the complacent attitude manifested by the comptroller of the currency. It is contended by appellants that the comptroller was familiar with their plan to form the holding company to effect the repair of the bank's capital, but this is denied by the comptroller and his officials, they stating they did not know anything about the planned corporation until May 10th, some days after the certificate of incorporation had been issued.

Section 5151, Rev. St. (12 USCA § 63), under which appellee is proceeding, was enacted primarily for the benefit of the creditors of national banking associations. The so-called double liability of shares of national bank stock prompts the public to select banks of this character with which to do business in preference to other institutions which do not have this additional stock liability. If the contentions of the appellants are correct, then the organization of this holding company had the effect of circumventing section 5151, Rev. St. The ownership of this 720 shares of stock carried with it the responsibility of this additional liability, and to say that the individual appellants by their own initiative could take the title to this block of stock from the Vandeventer Securities Company and practically suspend this statutory liability by placing title in a corporation, the only asset of which, at the time, or ever to be, was this block of stock, would be to render the provisions of this statute a complete nullity for all practical purposes. To deprive the creditors of a national bank of their statutory protection by such a method is wrong and the courts will not countenance the interposition of a mere corporate shadow to conceal who are the actual and beneficial owners of bank shares. To permit individuals to circumvent the contingent liability under this statute by simply organizing a corporation for the purpose of holding shares would set up a device against which the statute would ever afterwards be ineffective.

Judge Sanborn for this court in 1905 in the case of United States v. Milwaukee Refrigerator Transit Co. (C. C.) 142 F. 247, 255, stated that, "when the notion of legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law will regard the corporation as an association of persons." There has been a growing tendency upon the part of the courts to disregard corporate entity and to treat the stockholders thereof as an association of individuals when the interests of justice are to be served. Edward Finch Co. v. Robie (C. C. A.) 12 F.(2d) 360; Page v. Arkansas Natural Gas Corporation (C. C. A.) 53 F.(2d) 27; Callas v. Independent Taxi Owners' Ass'n, 62 App. D. C. 212, 66 F.(2d) 192; Laurent v. Anderson (C. C. A.) ·70 F.(2d) 819; J. J. McCaskill Co. v. United States, 216 U. S. 504, 30 S. Ct. 386, 54 L. Ed. 590; Trustees System Co. of Pennsylvania v. Payne (C. C. A.) 65 F.(2d) 103; Chicago, M. & St. P. Ry. Co. v. Minneapolis Civic & Commerce Ass'n, 247 U. S. 490–501, 38 S. Ct. 553, 62 L. Ed. 1229; Ohio Valley Nat. Bank v. Hulitt, 204 U. S. 162, 168, 27 S. Ct. 179, 51 L. Ed. 423; United States v. Lehigh Valley R. Co., 220 U. S. 257, 31 S. Ct. 387, 55 L. Ed. 458. The objects of the · statute are not to be defeated by mere forms of transactions. "The courts will look at the relations of parties as they actually are, or as, by reason of their conduct, they must be assumed to be, for the protection of creditors. Congress did not say that those only should be regarded as shareholders, liable for contracts, debts, and engagements of the banking association, whose names appear on the stock list distinctly as shareholders." Those may be treated as shareholders of the association within the meaning of section 5151 who are in fact the real owners of the stock

Pauly v. State Loan & Trust Co., 165 U. S. 606–623, 17 S. Ct. 465, 471, 41 L. Ed. 844. Particularly where a corporation is interposed to defeat or circumvent a statute, the courts have looked beyond corporate entity to ascertain the purposes for which it was organized and the persons identified with that purpose.

■ The view of the District Court that the holding company was a mere agency for the individual appellants who were the beneficial owners is the proper conclusion to be reached from the testimony in the case. The title to the stock did pass from the Vandeventer Securities Company and by record only it passed to the holding company. The corporation was in effect a mere custodian, a passive agency, while the individual appellants were the principal actors. A letter addressed to the comptroller of the currency and signed by all the individual appellants, except appellant Cave, significantly states: " * * * It became necessary for a group of our directors to arrange for the purchase of these 1315 shares of stock on such a basis as would enable them to take care of this impaired capital. Therefore this group of directors purchased the entire holdings of the Vandeventer Securities Company at $80.00 per share and are selling said stock to our directors and such other stockholders and customers as are interested at $110.00 a share, $30.00 per share of which is to be placed to the undivided profits account of the bank against which bond depreciation is to be charged." This letter, from which the above is a quotation, was written ten days after the holding company was organized, and it is significant that nowhere in it is mention made of the existence of the holding company. It is a fair inference to be drawn from this letter that the individual appellants considered and treated the holding company as a mere repository or custodian of the naked legal title and themselves as the principals in the entire transaction.

While different in some particulars, a very similar state of facts were involved in the case of Corker v. Soper (C. C. A.) 53 F.(2d) 190. Corker, president of a national bank which experienced capital impairment, subscribed for 150 shares of stock to be issued to rehabilitate the capital. He subscribed for it in his own name as agent, presumably, for a corporation which he formed later, in order to avoid personally the double liability. Corker borrowed the money with which to purchase the stock and secured the loan by putting up the stock as collateral. Subsequently he organized the Laurens Investment Company, and transferred all his old stock, except qualifying shares to it. The 150 shares of new stock had been issued at his request to the new company before its organization. The Circuit Court of Appeals for the Fifth Circuit held that the investment company was an agent of Corker. While the plan adopted by Corker did place certificates of stock in the name of the investment company, it did not divest Corker of the beneficial ownership of them, but left him the actual owner and therefore liable to the assessment. The facts in the Corker Case go a step farther than they do in the pending case. Corker admitted the purpose of organizing the corporation and transferring his stock to it was to avoid double liability upon his part. In the case before us the individual appellants not only denied that the holding company was organized for such purpose, but assert the same was organized in utmost good faith for the purposes outlined in their articles of incorporation. As further evidence of their good faith, they present they were under no obligation to acquire the bank stock, that the holding company was legally organized, and that under both state and federal laws it had a legal right to own shares of stock in a national banking association. On the other hand, they knew a substantial contribution had to be made to restore the bank's capital, or that a pro rata assessment would be made upon every share of the bank stock. If the plan they formulated had been successfully consummated, they would have been relieved of any contribution or pro rata assessment on the shares of stock owned by each of them. In other words, the effect of their plan was to have the shareholders of this block of 1,315 shares make the contribution for the entire shares of the bank's capital stock. This carefully and deliberately laid plan of preserving their own investments and maintaining the bank as a going concern doubtless would have been successful had not the depression decreed otherwise.

■■ It can scarcely be said that individual appellants, since they were directors of a national bank, did not know that the shares of national bank stock carried this statutory liability; if they did not have actual knowledge, they were, at least, presumed to have this knowledge. With this

knowledge they purchased the shares and placed the title thereto in a corporation against which they knew the efforts of creditors to realize the statutory liability on the shares, in case of ultimate insolvency of the bank, would be absolutely futile. The incorporators of the holding company may have acted in good faith according to their standards of right, but under the facts in this case, as disclosed by the record, they must be judged by the legal effect of what they deliberately did. If they were the beneficial owners of the shares in question and the corporation was merely an instrumentality set up for their own convenience in holding the title to the shares, then in equity it matters not what design, good or evil, prompted their actions; from either source, the effects of their actions—the avoidance of a statutory liability—are the same.

■■■ It is contended by appellants that this is a case triable at law, and that there are no grounds for equitable jurisdiction. Actions at law are usually employed to enforce the double liability of section 5151 against the stockholders of an insolvent national banking association. Appellee contended that the 720 shares of stock were recorded as belonging to the holding company when in fact the individual appellants were the actual and beneficial owners. The complaint carries throughout but one object and purpose, and that was the ascertainment of the real interests of the individual appellants in this stock, the recorded ownership of which was in a corporation. Equity jurisdiction may be invoked where there are complicated matters and interests, and degrees of interests involved, and where fraud upon creditors is involved in the transfer which is assailed. Bowden v. Johnson, 107 U. S. 251, 2 S. Ct. 246, 27 L. Ed. 386; Adams v. Clarke (C. C. A.) 22 F.(2d) 957; Corker v. Soper (C. C. A.) 53 F.(2d) 190; McDonald v. Dewey, 202 U. S. 510, 26 S. Ct. 731, 50 L. Ed. 1128, 6 Ann. Cas. 419. While the appellants denied in their answer the equity jurisdiction of the court, yet they made no resort to the usual procedure of a motion to dismiss the petition or to transfer the case to the law docket, and seemingly acquiesced in the equity proceedings. However this may be, it is clear that this case is one essentially for equitable cognizance.

■■■ It is suggested it would be inequitable to permit the receiver to maintain this suit in view of the fact the bank had received $39,000 from the holding company. The payment of this amount to the bank as a contribution to the rehabilitation of its capital stock was a plan originated and carried out by the individual appellants. Had the individual appellants taken title to the stock and made a $39,000 contribution to the restoration of the capital, the plea of estoppel would be of no avail to them as against the receiver in an action to enforce the statutory liability under section 5151. They, in fact, effected the contribution, and since they were the beneficial owners of the stock, it is difficult to understand how the receiver would be estopped to proceed because the bank received the money from the holding company any more than had it received the money from the individual appellants.

The appellants criticize the complaint, claiming that it is self-contradictory, self-destructive, and that it shows upon its face that the appellee was estopped to assert liability against the appellants individually. It is also contended that the findings of the court, the conclusions of law, and the ultimate disposition of the case are not justified by the pleadings and not in accordance with the rules.

■■■ The suit was not instituted exactly upon the same theory which the court adopted in disposing of it, but it is apparent from the complaint that the appellee charged the individual appellants with being the beneficial owners of this stock and being jointly and severally liable for the assessment levied upon it. The pleadings were sufficient to put in issue the question of the ownership of the stock at the time of the failure of the bank. So far as the findings of fact and conclusions of law are concerned, they are sufficient for the purpose of this appeal and that is all that is necessary. This court is required to determine from the evidence whether the decree was right or whether some other decree should be entered, this being in the nature of a trial de novo. Johnson v. Umsted et al. (C. C. A.) 64 F.(2d) 316; Roosevelt v. Missouri State Life Ins. Co. (C. C. A.) 70 F.(2d) 939, 944.

The decree of the lower court is affirmed.