**I. H. SPEARS, Appellant,**

v.

**TRANSCONTINENTAL BUS SYSTEM,**
Inc., a corporation, Appellee.

No. 14532.

United States Court of Appeals
Ninth Circuit.

Sept. 21, 1955.

---

I. H. Spears, Pasadena, Cal., for appellant.

Malcolm Archbald, Spray, Gould & Bowers, Los Angeles, Cal., for appellee.

Before STEPHENS and FEE, Circuit Judges, and WIIG, District Judge.

WIIG, District Judge.

I. H. Spears appeals from a judgment denying relief in his action claiming damages for a violation of his civil rights. In March 1953, appellant Spears purchased a bus ticket from the appellee, Transcontinental Bus System, Inc., at Pasadena, California. The ticket provided for transportation from San Francisco to New Orleans and return. On April 12, 1953, while routed between Memphis, Tennessee, and Jackson, Mississippi, the bus on which he was a passenger stopped at Winona, Mississippi. Just outside Winona, the bus driver demanded that Spears, a Negro, move from the fourth seat from the driver on the right hand side of the bus to the back seat, in order to segregate Spears from members of the white race. Spears stated that the order did not apply to interstate passengers but moved at the insistence of the driver. Five or six other Negroes were seated in the rear of the bus.

Because of this occurrence, Spears filed an action against Transcontinental Bus System, Inc., in the United States District Court for the Southern District of California, service of process being made on appellee's authorized agent in the state.

Spears' claim is founded on several sections of the United States Constitution and Code. Primary reliance is

placed on 42 U.S.C.A. § 1983 (formerly 8 U.S.C.A. § 43), which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, * * *."

Appellant also claims violations of the Interstate Commerce Act, 49 U.S.C.A. Under both 49 U.S.C.A. § 3(1), and 49 U.S.C.A. § 316(d), it is made unlawful for any common carrier to make or give any undue or unreasonable preference or advantage to any person; or to subject any particular person to any undue or unreasonable prejudice or disadvantage in any respect. Section 316(d) adds unjust discrimination as an unlawful act.

Other laws relied on by appellant do not add to his claim.[1]

Jurisdiction is based on 28 U.S.C.A. § 1337 and 28 U.S.C.A. § 1343.[2] In addition, there are allegations showing diversity of citizenship, a case arising under the Constitution and Laws of the United States, and proper jurisdictional amount. The case proceeded without challenge to the jurisdiction of the trial court, and no question is raised here.

At the trial the evidence showed that the acts complained of took place on a bus owned and operated by Continental Southern Lines, Inc., a separate corporation of Alexandria, Louisiana, whose stock was entirely or almost entirely owned by the appellee, Transcontinental Bus System, Inc. The bus driver, an employee of Continental Southern, acted under a Mississippi statute requiring that equal, but separate accommodations be provided for members of the white and colored races on common carriers.[3]

The trial court found that,

"* * * Transcontinental Bus System, Inc., did not exercise or possess any control over the bus driver above mentioned, or other agents, servants or employees of Continental Southern Lines, a corporation, with respect to segregation of negroes riding in interstate commerce * * *"

It was the court's view that Transcontinental's ownership of Continental Southern through stock control was not sufficient evidence of control over operations or of the particular conduct shown in this case to impose liability on the appellee. The court refused to disregard the separate entities of the two corporations, and granted judgment for Transcontinental.

We are asked to review this ruling on appellant's claims of error in not holding Transcontinental responsible for the acts alleged in the complaint as violating Spears' civil rights, and failing to consider the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., and certain reports of the Interstate Commerce Commission. An amicus curiae brief filed by the American Civil Liberties Union raises the ul-

---

1. The following excerpt is from appellant's complaint:

"* * * in violation of the 14th Amendment to the Constitution, Const. Art. 1, Sec. 8, Cl. 3, and the Bill of Rights, and the provisions of the Interstate Commerce Act as to passengers in Interstate commerce travel, and, this suit is brought to redress the deprivation of plaintiffs Civil Rights (as provided in 8 U.S.C.A. Sections 41, 43, and 47(3); and 28 U.S.C.A. Sec. 1343 (3), (1); and, Interstate Commerce Act, Secs. 3(1), 204(a), 216(a, d), 49 U.S.C.A. Secs. 3(1), 304(c), 316(a, d), 28 U.S.C.A. Sec. 1337; Const. Amend. 5, * * *"

2. 28 U.S.C.A. § 1337 provides that the district courts shall have original jurisdiction of any civil action arising under an act of Congress regulating commerce; 28 U.S.C.A. § 1343 gives original jurisdiction in cases to redress the deprivation of any right, privilege or immunity secured by the Constitution providing for equal rights of citizens.

3. Miss.Code Ann. § 7785 (1942).

timate question involved, whether or not the corporate entity should be disregarded.

Neither of the statutes relied on by appellant controls the determination of this case. If Spears has a claim under either the Civil Rights Statute, 42 U.S.C.A. § 1983 [4] or the Interstate Commerce Act, supra,[5] he has asserted it against the wrong defendant. Our decision will rest on other grounds, as did that of the trial court.

■■ Spears maintains that Transcontinental should be held responsible for the wrongful act of the bus driver because a common carrier selling a ticket to a point beyond its own lines is liable for injuries to a passenger. Generally, however, a carrier is only responsible for acts over its own lines, acts over which it has control. Louisville & N. R. Co. v. Chatters, 1929, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 711; Solomon v. Pennsylvania Ry., D.C.S.D. N.Y.1951, 96 F.Supp. 709. The evidence showed that appellant traveled over the lines of Transcontinental Bus System to Tucumcari, New Mexico, and again from Oklahoma City to Little Rock. From Little Rock to Memphis, he was on a bus owned and operated by Arkansas Motor Coach Lines, called Arkansas Trailways. From Memphis on through New Orleans, and through Winona, the bus was owned and operated by Continental Southern. Each of these carriers is a separate corporation, with its own directorate. They are joined through participation in the national tariff and by association in the Trailways organization.

In addition, a provision on the ticket sold to Spears read as follows: "In selling this ticket and checking baggage, the selling carrier acts only as agent and is not responsible beyond its own line." This provision is also contained in substance in the published tariffs filed with the Interstate Commerce Commission. Spears admitted his familiarity with these provisions from his many bus trips, although he did not remember reading this particular ticket.

As to this claim, we hold that Transcontinental was acting merely as agent for Continental Southern in the sale of the ticket of transportation, and assumed no responsibility for acts beyond its own lines.

Both Spears and the American Civil Liberties Union contend that liability should be imposed on Transcontinental because of the direct relationship of parent and subsidiary, and that the parent corporation should be held responsible for acts done by the subsidiary.

Transcontinental Bus System is a member of Continental Trailways, the trade name of the Trailways organization, an association of about fifty carriers which have banded together into a national bus system. The three operating divisions of Transcontinental Bus System are members of the Trailways association, as are the other bus companies over whose lines Spears traveled enroute to New Orleans, including Continental Southern Lines. Transcontinental itself carried Spears only as far as Little Rock, from which point he traveled over the lines of other Continental Trailways associates.

Evidence as to Transcontinental's control over Continental Southern was limited to a showing of complete or nearly complete stock ownership, and thereby

---

4. See Flemming v. South Carolina Elec. & Gas Co., 4 Cir., 1955, 224 F.2d 752, reversing D.C.E.D.S.C.1955, 128 F.Supp. 469.

5. See Whiteside v. Southern Bus Lines, 6 Cir., 1949, 177 F.2d 949; Chance v. Lambeth, 4 Cir., 1951, 186 F.2d 879, certiorari denied sub nom. Atlantic Coast Line R. Co. v. Chance, 1951, 341 U.S. 941, 71 S.Ct. 1001, 95 L.Ed. 1367, affirmed on appeal, 4 Cir., 198 F.2d 549, certiorari denied, 1952, 344 U.S. 877, 73 S.Ct. 172, 97 L.Ed. 679; Lyons v. Illinois-Greyhound Lines, 7 Cir., 1951, 192 F.2d 533; Williams v. Carolina Coach Co., D.C.E. D.Va.1952, 111 F.Supp. 329, affirmed, 4 Cir., 1953, 207 F.2d 408; Solomon v. Pennsylvania R. R. Co., D.C.S.D.N.Y. 1951, 96 F.Supp. 709.

participation in the profits of the subsidiary; participation in tariffs issued by the National Bus Tariff Association and filed with and approved by the Interstate Commerce Commission as to the agreed prorated share between the carriers involved as to rates; and various records of the Interstate Commerce Commission. These records show the relationship of Transcontinental to various subsidiaries and affiliated companies, including Continental Southern, as summarized by the Commission. They reveal stock ownership by Transcontinental of various companies, and mergers involving appellee. The only relevant sections relate to Transcontinental's willingness to advance funds to Continental Southern required to make advances in the acquisition of another corporation, on open account and without interest; and a warning that appropriate steps should be taken to effect a simplification of the intercorporate structure of the Transcontinental system at the earliest possible date.

None of this evidence, however, indicates more than Transcontinental's ownership of its subsidiary. No evidence was submitted showing any direct operating control over the rules, regulations or policies of Continental Southern.

There was, on the other hand, uncontradicted testimony that the only agreements between the two corporations were by participation in the national tariffs and that no other contractual agreements existed between them. There was also testimony that the corporations had separate directorates and were responsible for making and enforcing their own rules and regulations.

■ Generally, a corporation and its stockholders are deemed separate legal entities and stock ownership in itself is not sufficient to charge the parent company with responsibility for acts of the subsidiary. This rule is subject to the qualification that the separate entities may be disregarded in exceptional situations where it would otherwise present an obstacle to the due protection or enforcement of public or private rights, New Colonial Ice Co. v. Helvering, 1934, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Ohio Tank Car Co. v. Keith Ry. Equipment Co., 7 Cir., 1945, 148 F.2d 4, or would defeat public convenience, justify wrong, protect fraud, or defend crime. Metropolitan Holding Co. v. Snyder, 8 Cir., 1935, 79 F.2d 263, 103 A.L.R. 912.

■ Unfortunate as was the discrimination against Spears, there is no basis on the record as presented to hold Transcontinental responsible for the acts. No facts were presented to the trial court showing that Transcontinental had even an awareness of the rules and regulations of Continental Southern. As was said in New Colonial Ice Co. v. Helvering, supra, 292 U.S. at page 442, 54 S.Ct. at page 791:

"* * * in this case we find no such exceptional situation—nothing taking it out of the general rule. On the contrary, we think it a typical case for the application of that rule."

Under either statute relied on by appellant, and regardless of whether or not a claim against Continental Southern would be valid, there is no proof that Transcontinental operated or controlled the bus.

Two other objections raised by Spears may be disposed of summarily. Although the record is not complete on this point, it appears that Spears served approximately 33 requested admissions upon the appellee, 27 of which were answered and 6 of which were objected to. It is apparent from the record that a hearing was held on the requests to which objections had been filed, after which additional responses were filed by Transcontinental. Spears contends that the replies were not "verified" and failed to comply strictly with Rule 36, Federal Rules of Civil Procedure, and should have been deemed admissions on the part of Transcontinental. The transcript shows that the trial judge held a hearing on the requests and was satisfied that the

requirements of Rule 36 had been met, and we are likewise disposed.

Appellant's final claim of error is that the attitude of the trial judge throughout the trial showed bias and prejudice against Spears, and favor toward the appellee. Appellant cites no instance of such an attitude and the record reveals a contrary attitude. The judge was most anxious to see that appellant, who aided in the presentation of his case, had full and ample opportunity to present all the evidence that best supported his claim. In fact, the judge could well have become impatient with appellant's repeated insistence on pressing certain matters on which the court had already ruled. This claim is without merit.

The judgment is affirmed.