Theola **JACKSON** and **Roosevelt Jackson, Plaintiffs,**

v.

**CONTINENTAL TRAILWAYS, INC., et al., Defendants.**

**Civ. No. LV 2132 RDF.**

United States District Court, D. Nevada.

Nov. 22, 1974.

Charles L. Kellar, Las Vegas, Nev., for plaintiffs.

Austin, Thorndal & Liles, Las Vegas, Nev., for defendants.

## ORDER ON MOTIONS

ROGER D. FOLEY, Chief Judge.

### FACTS

This case involves a rather lengthy and complex personal injury action by plaintiffs against defendants, wherein plaintiff Theola Jackson alleges that due to defendants' negligence in discharging her from a bus, owned and operated by them on which she was a paying passenger, on a public highway in the State of Louisiana rather than at a designated terminal, she was struck and severely injured by another vehicle being operated on the same public highway. Plaintiffs also allege that defendants breached their contractual duty owed to plaintiff Theola Jackson arising out of the contract of hire entered into between the parties when plaintiff purchased the bus ticket that entitled her to make the aforementioned trip.

On March 31, 1972, plaintiffs filed their original complaint in the Eighth Judicial District of the State of Nevada

in and for the County of Clark (case No. A99983) against defendant Continental Trailways and four John Does. On October 10, 1972, defendant Continental Trailways filed an answer to this complaint. Plaintiffs filed an amended complaint on September 19, 1973, which added Continental Southern Lines, Inc., American Bus Lines, Inc., and Tommy L. Carroll as defendants. The amended complaint alleged that the added corporate defendants were subsidiaries of Continental Trailways, Inc., and the individual named defendant was the driver of the bus that plaintiff had alighted from immediately prior to her injury. On September 27, 1973, defendant Continental Trailways filed an answer to the amended complaint. On October 17, 1973, defendant American Bus Lines filed its answer to the amended complaint. On October 18, 1973, defendants Continental Trailways and American Bus Lines removed the action from State to Federal Court. On November 18, 1973, defendant Continental Southern Lines filed a motion to dismiss with this Court alleging lack of jurisdiction over the person, insufficiency of process and insufficiency of service of process. (This motion was subsequently granted.) On December 18, 1973, plaintiffs filed a motion to remand the case to State Court. This Court found that although defendant Continental Trailways had not timely removed, defendant American Bus Lines had timely removed, hence plaintiffs' motion to remand to State Court was denied as to both defendants. (See Order of February 8, 1974.)

Defendant Continental Southern Lines' motion to dismiss was heard by the United States Magistrate on March 6, 1974, the parties having agreed to accept the Magistrate's decision on the motion as the final decision of the District Court. On March 15, 1974, the Magistrate's Order granting Continental Southern's motion to dismiss was filed. This Order found that: (1) defendant Continental Southern Lines did not make a general appearance for the purposes of this litigation by appearing pursuant to the motion to dismiss, (2) that Continental Southern's motion to dismiss for lack of jurisdiction over the person, (3) insufficiency of process, and (4) insufficiency of service of process be granted. On March 7, 1974, plaintiffs filed a motion for an order of issuance of process against defendants Continental Southern Lines and Tommy L. Carroll which was granted by the Magistrate on May 29, 1974, and service was made outside of the District of Nevada.

On June 21, 1974, the motion to dismiss that is currently pending before this Court was filed by defendants Continental Southern Lines and Tommy L. Carroll. This motion to dismiss is based on Federal Rules of Civil Procedure Rule 12, lack of jurisdiction over the person. Defendant Continental Southern Lines, Inc., alleges that it was (at the time of plaintiffs' complaint) and is now presently a corporation organized under the laws of Delaware and is not subject to service of process within the District of Nevada. It further alleges that the alleged tortious conduct which was the basis of plaintiffs' action did not occur in the District of Nevada. Defendant Tommy L. Carroll alleges that he was (at the time of plaintiff's accident) and is now presently a resident of the State of Louisiana, and is not subject to service of process in the District of Nevada, not being personally present here, nor domiciled here, nor having a personal representative for the purpose of receiving service of process here. He further alleges that the alleged tortious conduct which is the basis of the action did not occur in the District of Nevada. On July 2, 1974, plaintiffs filed their points and authorities in opposition to defendants' motion to dismiss for lack of jurisdiction over the person. Plaintiffs' points and authorities were filed within the 15 day time limit set forth for such responses by Local Rule 16(c).

On July 3, 1974, defendants Continental Southern Lines and Tommy L. Carroll filed a motion for protective order arising out of a notice to take deposition filed approximately June 26, 1974, by plaintiffs' counsel. This is the second of defendants' two motions that are currently pending before this Court. It must be noted at this time that plaintiffs have *not* filed a responsive memorandum to this motion for protective order as required under Local Rule 16(c), hence under Local Rule 16(e) the Court may consider the plaintiffs as having consented to the granting of defendants' motion.

## ISSUES

(1) Are defendants Continental Southern Lines and Tommy L. Carroll subject to the personal jurisdiction of this Court pursuant to Nevada's Long Arm Statute (NRS § 14.065)? (This issue must be further divided into two sub-issues.)

(A) Are defendants transacting any business within the State so as to come within the scope of the Statute?

(B) Is it possible to consider defendant Continental Southern Lines (a separate corporation) as comprising a single entity with defendant Continental Trailways (the alleged parent corporation over whom this Court already has personal jurisdiction) so that the Court could acquire jurisdiction over them in that fashion pursuant to the Long Arm Statute?

(2) Should defendants Continental Southern Lines and Tommy L. Carroll's motion for protective order be granted?

## CONCLUSION

The file in the instant case does not indicate whether at the time the accident occurred to plaintiff Theola Jackson the plaintiffs were Nevada domiciliaries temporarily in the State of Louisiana, or were Louisiana domiciliaries (or domiciliaries\of some unknown third state) who subsequently moved to Las Vegas and commenced this action in the State Courts of Nevada. However, regardless of the location of plaintiffs' domicile, all activities that gave rise to this lawsuit occurred wholly within the State of Louisiana. As noted supra, the plaintiffs originally filed a complaint only against defendant Continental Trailways, Inc., since apparently plaintiff Theola Jackson had been a ticketed passenger discharged from a bus marked with the insignia "Continental Trailways" immediately prior to her accident in the State of Louisiana. Subsequent to discovery done by their counsel, plaintiffs found that two additional separate corporations were in charge of the buses marked "Continental Trailways" that operated within the States of Nevada and Louisiana. American Bus Lines was the corporation charged with the Nevada operations, and Continental Southern Lines was the corporation charged with the Louisiana operations. For this reason, these last two corporations were added as party-defendants in plaintiffs' amended complaint. Plaintiffs further discovered that Tommy L. Carroll was the driver of the bus that plaintiff Theola Jackson had departed from immediately prior to her accident, hence he was also added as a party-defendant in the amended complaint.

Plaintiffs infer that when defendants Continental Southern Lines and Tommy L. Carroll made their motion to dismiss for lack of jurisdiction over the person, the making of the motion amounted to a general appearance before the Court that subjected the defendants to the jurisdiction of the Court. Upon an examination of the history of the proceedings in this case it will be found that defendants Continental Southern Lines and Tommy L. Carroll have played a very limited role in the defense of plaintiffs' suit. These defendants have filed a total of three motions with this Court. (Not including responses to plaintiffs' opposition to those motions.) These defendants have filed two motions to dismiss, and one motion for protective or-

der. All other motions and responsive pleadings in the case have been filed by defendants Continental Trailways and American Bus Lines. The answer to plaintiffs' original and amended complaints was filed only by these last two defendants, as were the motions for removal and in opposition to remand. Defendant Continental Southern Lines (even though it may be a subsidiary of Continental Trailways) has been very careful to avoid making a general appearance to contest the merits of plaintiffs' claim. Defendant Tommy L. Carroll has likewise attempted to refrain from such appearances.

On March 15, 1974, the Magistrate filed an Order granting defendant Continental Southern Lines' first motion to dismiss, which alleged, among other things, lack of jurisdiction over the person. In this Order the Magistrate noted specifically that defendant Continental Southern Lines did not make a general appearance for the purposes of this litigation by appearing pursuant to the motion to dismiss. This same reasoning would apply to defendants Continental Southern Lines and Tommy L. Carroll's second motion to dismiss which is currently pending before this Court. The cases also support this position.

In Wright v. Yackley, 459 F.2d 287 (9th Cir. 1972), the defendant appeared in the case in order to file a Rule 12(b) motion to dismiss for lack of jurisdiction over the person. The Court held that by making this motion the defendant did not make a general appearance and submit himself to the jurisdiction of the Court. Further, the commentators have noted that, "[S]pecial appearances are no longer necessary in any case. Rule 12 has abolished for federal courts the age-old distinction between general and special appearances." 2A Moore's Federal Practice ¶ 12.12 at pp. 2324–2325. Professor Moore goes on to say that,

"[I]f a defendant proceeds first on the merits, as by a motion to dismiss for failure to state a claim or by an answer on the merits, and thereafter attempts to challenge jurisdiction over his person . . . , the challenge should fail; it comes too late, . . ." Id. at 2322.

Defendants Continental Southern Lines and Tommy L. Carroll did not attempt to first proceed on the merits of plaintiffs' claim and then at a later time assert the defense of lack of jurisdiction over the person. In view of this, this Court finds that it has not acquired jurisdiction over the person of these defendants by virtue of their filing their motions to dismiss and for protective order.

Having determined that the Court has not acquired personal jurisdiction over the defendants by virtue of their limited appearances in the instant case, it next becomes necessary to determine whether the Court has acquired jurisdiction over them pursuant to Nevada's so-called "Long-Arm" Statute.

"State law governs the question of whether a foreign corporation is subject to its in personam jurisdiction provided such state law is within federal Constitutional requirements, which requirements involve a question to be determined by federal law." Berk v. Gordon Johnson Company, 212 F.Supp. 365, 367 (E.D.Mich.1962).

It must be noted that at this stage of the analysis it is necessary to consider defendant Continental Southern Lines as a wholly separate corporate entity (the "alter-ego" theory of plaintiffs will be discussed infra). Further, defendant Tommy L. Carroll will have to be considered a separate legal entity, or, at most, an agent of defendant Continental Southern Lines.

Nevada's Long Arm Statute provides in pertinent part that,

**14.065 Personal service of process on party outside state.**

1. Personal service of summons upon a party outside this state is suf-

ficient to confer upon a court of this state jurisdiction of the person of the party so served if:

(a) Such service is made by delivering a copy of the summons, together with a copy of the complaint, to the party served in the manner provided by statute or rule of court for service upon a person of like kind within this state; and

(b) Such party has submitted himself to the jurisdiction of the courts of this state in a manner provided by this section.

2. Any person who, in person or through an agent or instrumentality, does any of the acts enumerated in this subsection thereby submits himself and, if an individual, his personal representative to the jurisdiction of the courts of this state as to any cause of action which arises from the doing of such acts:

(a) Transacting any business or negotiating any commercial paper within this state;

(b) Committing a tortious act within this state;

(c) Owning, using or possessing any real property situated in this state;

(d) Contracting to insure any person, property or risk located within this state at the time of contracting; or

(e) Living in the marital relationship within this state notwithstanding subsequent departure from this state, as to all obligations arising for alimony, child support or property settlement, if the other party to the marital relationship continues to reside in this state.

3. Only causes of action arising from these enumerated acts may be asserted against a defendant in an action in which jurisdiction over him is based on this section.

4. The method of service provided in this section is cumulative, and may be utilized with, after or independently of other methods of service.

(Added to NRS by 1969, 845)

NRS § 14.065. The portion of the section that confers jurisdiction over the person by the commission of a tortious act within the state is clearly not applicable in the instant case since the alleged tortious conduct occurred wholly within the State of Louisiana. This fact may further tend to negate jurisdiction over the person of the defendants since subsection 3 notes that, "[O]nly causes of action arising from these enumerated acts may be asserted against a defendant in an action in which jurisdiction over him is based on this section." NRS § 14.065(3), and even if defendants were "transacting business" within Nevada it would appear that the cause of action did not arise out of the transaction of business within this State.

After defendant Continental Southern Lines' initial motion to dismiss was granted by the Magistrate, plaintiffs moved pursuant to Title 28 U.S.C. § 1447(a) for issuance of process by this Court against defendants Continental Southern Lines and Tommy L. Carroll. Defendants offered no opposition to this motion and on May 29, 1974, upon a showing of good cause, the Magistrate filed an Order directing that process be issued against the aforementioned defendants. Defendant Tommy L. Carroll was served personally by the United States Marshall in Bossier City, Louisiana, and defendant Continental Southern Lines was served personally, through its apparent resident agent C. T. Corporation Systems, in New Orleans, Louisiana.

Traditionally, the concept of personal jurisdiction over a non-resident defendant was a very limited one, but in recent years the concept has been greatly expanded.

Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto pow-

er over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. Pennoyer v. Neff, 95 U.S. 714, 733, [24 L.Ed. 565.] But now that the *capias ad respondendum* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam,* if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." Milliken v. Meyer, 311 U.S. 457, 463, [61 S.Ct. 339, 343, 85 L.Ed. 278.]

Internat. Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Subsequent Supreme Court cases went even further in expanding the rigid rule of in personam jurisdiction laid down by Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878). For example, in McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), the Supreme Court allowed California to obtain personal jurisdiction over a Texas life insurance company on the basis of a single policy within California, the premiums of which were mailed from California to Texas. An even later Supreme Court case reviewed the expansion of the concept of in personam jurisdiction but noted that the expansion was not limitless:

> In *McGee* the Court noted the trend of expanding personal jurisdiction over nonresidents. As technological progress has increased the flow of commerce between States, the need for jurisdiction over nonresidents has undergone a similar increase. At the same time, progress in communications and transportation has made the defense of a suit in a foreign tribunal less burdensome. In response to these changes, the requirements for personal jurisdiction over nonresidents have

evolved from the rigid rule of Pennoyer v. Neff, 95 U.S. 714, [24 L.Ed. 565.] to the flexible standard of International Shoe Co. v. [State of] Washington, 326 U.S. 310, [66 S.Ct. 154, 90 L.Ed. 95.] But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U.S. 416, 418, [77 S.Ct. 1360, 1362, 1 L. Ed.2d 1456.] Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him.

Hanson v. Denckla, 357 U.S. 235, 250–251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1957). The case is also often cited for the proposition that in order to acquire personal jurisdiction over a defendant,

> " . . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, id. 357 U. S. at 253, 78 S.Ct. at 1240.

The Supreme Court has further noted that the concept of personal jurisdiction is more restrictive than general choice of law concepts. With reference to a State's power to acquire personal jurisdiction, the Court has noted that, "[I]t does not acquire that jurisdiction by being the 'center of gravity' of the controversy, or the most convenient location for litigation. The issue is personal jurisdiction, not choice of law." Hanson v. Denckla, id. 357 U.S. at 254, 78 S.Ct. at 1240.

Several lower court decisions have attempted to interpret the language of *In-*

*ternational Shoe, McGee,* and Hanson v. Denckla in order to arrive at a conclusion with respect to the requirements of personal jurisdiction. A 1959 Ninth Circuit case cited the following passage which specifies three rules for consideration:

"12. There are three rules which can be drawn from a combined reading of International Shoe, McGee and Hanson against which all future litigation of a like nature may be tested. * * * The rules are:

"(1) The nonresident defendant must do some act or consummate some transaction within the forum. It is not necessary that defendant's agent be physically within the forum, for this act or transaction may be by mail only. A single event will suffice if its effects within the state are substantial enough to qualify under Rule Three.

"(2) The cause of action must be one which arises out of, or results from, the activities of the defendant within the forum. It is conceivable that the actual cause of action might come to fruition in another state, but because of the activities of defendant in the forum state there would still be a 'substantial minimum contact.'

"(3) Having established by Rules One and Two a minimum contact between the defendant and the state, the assumption of jurisdiction based upon such contact must be consonant with the due process tenets of 'fair play' and 'substantial justice.' If this test is fulfilled, there exists a 'substantial minimum contact' between the forum and the defendant. The reasonableness of subjecting the defendant to jurisdiction under this rule is frequently tested by standards analogous to those of forum non conveniens."

47 Georgetown L.J. 342, 351–52 (1958).

L. D. Reeder Contractors of Ariz. v. Higgins Industries, 265 F.2d 768, 773–774 (9th Cir. 1959). The case went on to note that the ultimate test in any given case is the reasonableness of making the defendant appear and litigate in the forum. In this context the Court could also consider the factors to be weighed under the doctrine of "forum non conveniens." While the issues involved in the doctrines of in personam jurisdiction and forum non conveniens are not identical there are similar considerations that could be relevant to both doctrines. For example, under the doctrine of forum non conveniens,

"Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility (sic) of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. * * * [P]laintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. * * *

"Factors of public interest also have place in applying the doctrine. * * * There is a local interest in having localized controversies decided at home. There is an appropriateness, too, in having the trial * * * in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."

*L. D. Reeder,* id. 265 F.2d at 775–776.

A three-step test similar to the one cited in *L. D. Reeder,* supra, was adopted in a recent Sixth Circuit case to measure the present outerlimits of the concept of in personam jurisdiction.

"First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." Southern Machine Company v. Mohasco Industries, Inc., 401 F.2d 374, 381 (6th Cir. 1968).

This test was adopted by the Nevada Supreme Court in the most recent (and apparently only) case to consider the reach of NRS § 14.065, the Nevada "long-arm" statute. See Certain-Teed Products Corporation v. Second Judicial District Court, 479 P.2d 781 (Nev.1971).

The Nevada Supreme Court has interpreted the statutory language of NRS § 14.065 as disclosing ". . . a legislative intention to reach the outer limits of federal constitutional due process." *Certain-Teed,* id. 479 P.2d at 784. In deciding that the phrase "transacting any business within this state" was meant to be virtually unrestricted the Court noted that,

"[T]he constitutional concern is whether the transaction of business in Nevada produced effects here of such significance that it is not unfair to allow this state to resolve resulting litigation. In short, are traditional notions of fair play and substantial justice offended?" *Certain-Teed,* id. 479 P.2d at 784.

According to the *Certain-Teed* case, the first test to be applied to determine if defendants Continental Southern Lines and Tommy L. Carroll have transacted any business within this state is: did they purposefully avail themselves of the privilege of acting, or causing a consequence, in the state. As noted supra, the facts in this case indicate that Continental Trailways, Inc., is the "parent" corporation, and it has created "subsidiary" corporations to handle its operations in various states. American Bus Lines is the corporation that handles the Nevada operations, and Continental Southern Lines is the corporation in charge of the Louisiana operations. Although plaintiffs allege that Continental Southern Lines transacts business in Nevada in the form of selling tickets and providing transportation services, it does not appear that Continental Southern Lines (as a separate corporate entity) transacts business anywhere other than the State of Louisiana. Plaintiffs have not alleged that Continental Southern Lines maintains an office in this state, or is incorporated here, or registered with the Secretary of State, or has an agent to receive service of process located here. Plaintiffs apparently refuse to recognize the separate corporate identity of defendant Continental Southern Lines, alleging at various times that Continental Southern Lines is the "parent" corporation, and that Continental Southern Lines sells tickets in the State of Nevada. Plaintiffs even attached a photo-copy of a bus ticket apparently purchased from the local Continental Trailways ticket office to support this contention. (See plaintiffs' opposition to defendants' motion to dismiss.) However, an examination of this ticket reveals that the only corporation identified on the ticket is the defendant Continental Trailways, Inc. Nowhere does the name Continental Southern Lines appear on the face of the ticket in question.

In similar fashion, there is nothing in the file to indicate that defendant Tommy L. Carroll has ever transacted any business in the State of Nevada. The plaintiffs allege that he was the driver of the bus plaintiff Theola Jackson had alighted from immediately preceding her accident, but, as noted supra, this activity took place entirely within the State of Louisiana. Defendant Carroll was served with process in the State of Loui-

siana. There are no facts alleged to indicate that defendant Carroll has ever been employed in his capacity as a bus driver within this state, and indeed, there are no facts alleged to indicate that he has ever been within the physical boundaries of this state. For these reasons it would appear that the plaintiffs have not established that the defendants meet the requirements of the first test adopted by the Nevada Supreme Court in the *Certain-Teed* case, i. e., that the defendants have purposefully availed themselves of the privilege of acting or causing a consequence within this state.

The second test adopted by the Court in the *Certain-Teed* case is that the cause of action arise from the defendants' activities within the state. As noted supra, plaintiffs' entire cause of action arose from defendants' alleged activities within the State of Louisiana. The ticket was purchased there, the bus ride was taken there, and the alleged tort occurred there. There are no facts alleged by plaintiffs to even indicate that subsequent medical treatment was required within the state of Nevada. So it would appear that Nevada's only connection with the alleged tortious activity is that it is the current domicile of the plaintiffs.

The final test adopted by the *Certain-Teed* case is that the acts of the defendants or the consequences of those acts must have a substantial enough connection with the state to make the exercise of personal jurisdiction over the defendants reasonable. Again, it would not only appear that the acts of the defendants do not have a substantial connection with this state; it would appear that they have no connection. One recent Fifth Circuit case has noted that,

" . . . while very little purposeful activity within a state is necessary to satisfy the minimum contacts requirement, we have, nevertheless, unequivocally required *some* activity by the defendant before permitting the exercise of in personam jurisdiction under a state "long-arm" statute, the jurisdictional touchstone being the presence of sufficient in-state business activity to indicate a purposeful enjoyment of the benefits and protections of that state's law." (Benjamin v. Western Boat Building Corporation, 472 F.2d 723, 726 (5th Cir. 1973) (emphasis orig.)

With regard to the consequences of defendants' acts having some connection with this state, it could be inferred by the Court that plaintiff Theola Jackson required some medical attention within this state due to her injuries incurred in Louisiana, however, plaintiffs do not offer any allegations to support this inference, nor do they even suggest it.

No matter how far, within Constitutional due process limitations, this Court were willing to stretch the application of the Nevada "long-arm" statute, it does not appear that in personam jurisdiction could be acquired over defendants Continental Southern Lines and Tommy L. Carroll. It does not appear that these defendants have "transacted any business within this state", and the alleged tortious activity did not occur here. For these reasons, defendants' motion to dismiss must be granted.

As a general proposition, it appears that the plaintiffs in the instant case choose to ignore the separate corporate identity of defendant Continental Southern Lines. Plaintiffs allege that all corporations that operate buses bearing the name "Continental Trailways" are but "alter egos" of each other, and for that reason jurisdiction over the alleged "parent" Continental Trailways, Inc., amounts to jurisdiction over the alleged "subsidiaries". Plaintiffs cite State v. MacPherson, 62 N.M. 308, 309 P.2d 981 (1957) for the proposition that service on one "alter ego" is sufficient to confer jurisdiction over all other corporations under the same "umbrella". However,

the facts of the *MacPherson* case are not on point with the instant case. There, three separate corporations shared the same corporate offices, board of directors, and secretary. The Court in that case felt that although three separate corporations were involved, they were so closely connected as to be considered one giant octopus corporation. Regardless of plaintiffs' conclusory allegations, there are no ultimate facts presented in the instant case that would allow the Court to reach the same conclusion. Continental Trailways, Inc., the alleged "parent" is a Delaware corporation headquartered in Texas. The defendant Continental Southern Lines is also a Delaware corporation, but is apparently headquartered in Louisiana. There is nothing to indicate that the two corporations have so-called "interlocking" boards of directors. In their answers to plaintiffs' interrogatories, defendants Continental Trailways and American Bus Lines have produced lists of the principal officers of each corporation. While certain names appear on both lists, the lists are not identical. While no information is given with respect to the officers of Continental Southern Lines, it can be inferred that its officers are also not identical with the officers of the other two corporations involved in the instant suit.

A very common situation in which courts will "pierce the corporate veil" occurs when separate thinly capitalized corporations are set up by the same individuals for the purpose of limiting their individual liability for the acts of the corporations. If a particular plaintiff will suffer grave injustice because of the undercapitalization, the courts are not reluctant to "pierce the corporate veil" and allow recovery from the "alter egos". However, that does not appear to be the situation in the instant case. There has been no allegation that plaintiffs would suffer grave injustice if they were forced to sue Continental Southern Lines in Louisiana, where they could assuredly obtain jurisdiction over them. There has been no allegation that Continental Southern Lines is undercapitalized, such that plaintiffs could not secure any monetary recovery against them. The only thing that does appear clearly in the instant case is that plaintiffs have chosen to sue in Nevada because it is their present home.

A fairly recent Nevada Supreme Court case illustrates Nevada's view on the application of the "alter ego" doctrine:

In Baer v. Walker, 85 Nev. 219, 452 P.2d 916 (1969), we said: "The corporate cloak is not lightly thrown aside. Nevada Tax Commn. v. Hicks, 73 Nev. 115, 310 P.2d 852 (1957). However, adherence to the fiction of a separate entity must not sanction a fraud or promote injustice." In McCleary Cattle Co. v. Sewell, 73 Nev. 279, 317 P.2d 957 (1957), this court adopted from Minifie v. Rowley, 187 Cal. 481, 202 P. 673 (1921), the following requirements for the application of the alter ego doctrine: (1) The corporation must be influenced and governed by the person asserted to be its alter ego. (2) There must be such unity of interest and ownership that one is inseparable from the other. (3) The facts must be such that adherence to the fiction of separate entity would, under the circumstances, sanction a fraud or promote injustice.

Each of these requirements must be present before the alter ego doctrine can be applied.

North Arlington Med. Bldg., Inc. v. Sanchez Const. Co., 86 Nev. 515, 471 P.2d 240, 243 (1970). Plaintiffs in the instant case have made no allegations that the relationship between defendants Continental Trailways and Continental Southern Lines meets the criteria of the above quoted test.

The final case to be discussed is not directly on point in that it concerns the tort liability of the parent corporation

for the tortious conduct of the subsidiary, while in the instant case the Court is presented with the issue of personal jurisdiction over the parent corporation as giving personal jurisdiction over the subsidiary. However, as will become clear, the cited case is so strikingly similar to the instant case (in fact it involves the *same* corporate defendants) that it should dispose of the defendants' motion to dismiss and, in addition, should dispose of plaintiffs' entire case on the merits.

This 1955 Ninth Circuit case concerns a California plaintiff who purchased bus tickets in California that were ultimately to place him on a Continental Trailways bus in Louisiana operated by Continental Southern Lines where the alleged tortious activity took place. Although it is not so directly stated in the case, it is apparent that plaintiff could not secure in personam jurisdiction over Continental Southern Lines in California, so instead he chose to sue the parent corporation Transcontinental Bus System, Inc., over whom he could acquire jurisdiction, and attempt to hold them liable for the alleged tortious conduct of their subsidiary. The District Court denied his claim for relief and he appealed.

At the trial the evidence showed that the acts complained of took place on a bus owned and operated by Continental Southern Lines, Inc., a separate corporation of Alexandria, Louisiana, whose stock was entirely or almost entirely owned by the appellee, Transcontinental Bus System, Inc. The bus driver, an employee of Continental Southern, acted under a Mississippi statute requiring that equal, but separate accommodations be provided for members of the white and colored races on common carriers.[3]

The trial court found that,

" * * * Transcontinental Bus System, Inc., did not exercise or possess any control over the bus driver above mentioned, or other agents, servants or employees of Continental Southern Lines, a corporation, with respect to segregation of negroes riding in interstate commerce * * * * "

It was the court's view that Transcontinental's ownership of Continental Southern through stock control was not sufficient evidence of control over operations or of the particular conduct shown in this case to impose liability on the appellee. The court refused to disregard the separate entities of the two corporations, and granted judgment for Transcontinental.

Spears v. Transcontinental Bus System, 226 F.2d 94, 96 (9th Cir. 1955), cert. den. 350 U.S. 950, 76 S.Ct. 326, 100 L. Ed. 828, reh. den. 350 U.S. 977, 76 S.Ct. 443, 100 L.Ed. 847.

The Court in *Spears* went on to say that, " . . . the ultimate question involved, [is] whether or not the corporate entity should be disregarded." *Spears*, id. 226 F.2d at 97. The case further presents a good discussion of the relationship between the parent corporation and its subsidiaries:

Transcontinental Bus System is a member of Continental Trailways, the trade name of the Trailways organization, an association of about fifty carriers which have banded together into a national bus system. The three operating divisions of Transcontinental Bus System are members of the Trailways association, as are the other bus companies over whose lines Spears traveled enroute to New Orleans, including Continental Southern Lines. Transcontinental itself carried Spears only as far as Little Rock, from which point he traveled over the lines of other Continental Trailways associates.

Evidence as to Transcontinental's control over Continental Southern was limited to a showing of complete or nearly complete stock ownership, and thereby participation in the profits of the subsidiary; participation in tariffs issued by the National Bus Tariff

Association and filed with and approved by the Interstate Commerce Commission as to the agreed prorated share between the carriers involved as to rates; and various records of the Interstate Commerce Commission. These records show the relationship of Transcontinental to various subsidiaries and affiliated companies, including Continental Southern, as summarized by the Commission. They reveal stock ownership by Transcontinental of various companies, and mergers involving appellee. The only relevant sections relate to Transcontinental's willingness to advance funds to Continental Southern required to make advances in the acquisition of another corporation, on open account and without interest; and a warning that appropriate steps should be taken to effect a simplification of the intercorporate structure of the Transcontinental system at the earliest possible date.

*Spears*, id. 226 F.2d at 97–98. The facts presented by the instant case are very similar in that they too essentially indicate only that Continental Trailways owns stock in Continental Southern Lines. Commenting on the evidence presented in the *Spears* case the Court noted,

> None of this evidence, however, indicates more than Transcontinental's ownership of its subsidiary. No evidence was submitted showing any direct operating control over the rules, regulations or policies of Continental Southern.
>
> There was, on the other hand, uncontradicted testimony that the only agreements between the two corporations were by participation in the national tariffs and that no other contractual agreements existed between them. There was also testimony that the corporations had separate directorates and were responsible for making and enforcing their own rules and regulations.

■ Generally, a corporation and its stockholders are deemed separate legal entities and stock ownership in itself is not sufficient to charge the parent company with responsibility for acts of the subsidiary. This rule is subject to the qualification that the separate entities may be disregarded in exceptional situations where it would otherwise present an obstacle to the due protection or enforcement of public or private rights, New Colonial Ice Co. v. Helvering, 1934, 292 U. S. 435, 54 S.Ct. 788, 78 L.Ed. 1348; Ohio Tank Car Co. v. Keith Ry. Equipment Co., 7 Cir., 1945, 148 F.2d 4, or would defeat public convenience, justify wrong, protect fraud, or defend crime. Metropolitan Holding Co. v. Snyder, 8 Cir., 1935, 79 F.2d 263, 103 A.L.R. 912.

■ Unfortunate as was the discrimination against Spears, there is no basis on the record as presented to hold Transcontinental responsible for the acts. No facts were presented to the trial court showing that Transcontinental had even an awareness of the rules and regulations of Continental Southern.

*Spears*, id. 226 F.2d at 98.

Likewise, in the instant case plaintiffs have made no allegations to show anything other than stock ownership of the subsidiary corporation by the parent. A final comment by the Court in *Spears* seems especially appropriate to the case at bar, ". . . regardless of whether or not a claim against Continental Southern would be valid, there is no proof that Transcontinental operated or controlled the bus." *Spears*, id. 226 F.2d at 98.

It appears that this Court could, and should, properly rely on the holding in the *Spears* case to grant defendants Continental Southern Lines and Tommy L. Carroll's motion to dismiss for lack of jurisdiction over the person. In addition, should the plaintiffs decide to further prosecute their case against defend-

ants Continental Trailways and American Bus Lines (over whom the Court already has personal jurisdiction) it would appear that on the basis of the *Spears* case the defendants should prevail.

 This Court need not reach the issues presented by defendants' motion for protective order for two reasons. (1) Plaintiffs have failed to file a response to the motion within the time limit set forth by Local Rule 16(c), and, (2) the date for taking of depositions that defendants sought to be protected against has passed (see defendants' motion for protective order p. 2), and the defendants did not seek an order shortening time, hence their motion is moot.

Continental Southern Lines and Tommy L. Carroll's motions to dismiss are granted with prejudice. The remaining defendants, Continental Trailways and American Bus Lines, are encouraged to move for summary judgment against the plaintiffs on the theory of the *Spears* case discussed above.